895 P.2d 277

**Kimberlee Anne GOMEZ, n/k/a Kimberlee Anne Mason, Petitioner–Appellant,**

v.

**Camilo Ciro GOMEZ, Jr., Respondent–Appellee.**

**No. 15598.**

Court of Appeals of New Mexico.

April 20, 1995.

756

Aaron Bartels, Santa Fe, for petitioner-appellant.

Jan B. Gilman, Gregg G. Velasquez, Little & Gilman, P.A., Albuquerque, for respondent-appellee.

PICKARD, Judge.

Mother appeals from a district court order modifying child support and distributing house sale proceeds. Mother raises three issues in her brief in chief: (1) whether the trial court erred in ordering that child support be modified prospectively from the date of the hearing on the petition to modify child support and in refusing to retroactively increase child support from the date of the filing of the petition; (2) whether the trial court erred in using Worksheet A of the New Mexico Child Support Guidelines (the Guidelines), NMSA 1978, Section 40–4–11.1(J) (Repl.Pamp.1994) (hereinafter Worksheet A) instead of Worksheet B, NMSA 1978, Section 40–4–11.1(K) (Repl.Pamp.1994) (hereinafter Worksheet B) to calculate the child support payments; and (3) whether the trial court erred in ordering that the parties bear their own attorney fees. Mother withdrew a fourth issue regarding the assignment of an income tax deduction relating to the dependant child and does not challenge the trial court's disposition of the home sale proceeds.

We hold that the trial court erred in using Worksheet A instead of Worksheet B and that this error necessitates a remand with directions that the trial court find further facts. This further factfinding may or may not result in a material change in the child support calculation, and if there is a change in child support, that may bear on the trial court's decision regarding the effective date of the modification and on its decision regarding attorney fees. Because of these possibilities, in addition to the fact that the judge to whom this case was tried is no longer on the bench, we vacate all challenged portions of the trial court's order and remand to allow a substitute trial judge to redecide all of these matters. *See Blake v. Blake*, 102 N.M. 354, 366, 368, 695 P.2d 838, 850, 852 (Ct.App.1985) (recognizing interrelated nature of various items in a divorce decree and holding that trial court could make adjustments to achieve fairness in light of remand on some issues); *Apodaca v. Payroll Express, Inc.*, 116 N.M. 816, 821–22, 867 P.2d 1198, 2003–04 (Ct.App.1993) (providing that upon remand to a new judge, the new judge

may conduct a full or partial evidentiary hearing); *see also Grudzina v. New Mexico Youth Diagnostic & Dev. Ctr.,* 104 N.M. 576, 580–81, 725 P.2d 255, 259–60 (Ct.App.) (discussing whether new judge may proceed on the record or must conduct a new hearing), *cert. quashed,* 104 N.M. 460, 722 P.2d 1182 (1986).

Mother and Father were divorced on August 2, 1988, at which time both parties lived in Los Alamos County. There was one child born of the marriage. In the divorce decree, the trial court established joint custody and ordered Father to pay child support of $332.50 per month. Upon Mother's request, Father voluntarily increased the amount of child support to $500 per month. Although that amount was not reduced to court order, Father generally complied in paying it. Mother petitioned for modification of child support on September 18, 1992. In the interim, Mother had moved from Los Alamos to Española to Albuquerque to Moriarity, where she resided at the time of the filing of the petition. Father had moved from Los Alamos to New Jersey, where he resided at the time of the filing of the petition, and back to Los Alamos, where he resided at the time of the hearing on the petition. The trial court ordered the child support matter referred to the family court mediation services for purposes of mediation. The mediator found that Mother had no monthly income, Father had a monthly income of $7,083, and Mother had no work-related child care expenses. The mediator also found that, with Father in New Jersey, the parties exercised a visitation schedule which required Worksheet A to be used to calculate the amount of child support that should be ordered under the Guidelines and recommended that Father be ordered to pay $758 per month as child support during the pendency of the petition. As an interim measure, the trial court adopted the mediator's findings and recommendations in May of 1993.

After a March 22, 1994, hearing on the petition, the trial court entered a final order modifying child support on April 13, 1994. Even though the parties agreed that Father had custody of the child over thirty percent of the time, the trial court used Worksheet A to calculate the amount of child support that Father should be ordered to pay and ordered Father to pay child support of $692 per month, beginning in April 1994. The amount of child support that Father was ordered to pay was abated during the summer months when the child resided primarily with Father, and was ordered reduced upon the birth of Father's second child in July 1994 to $660 per month. The final order specifically directed that there would be no retroactive increase in child support. The effect of the order was that the interim order was left intact, so that Father was required to pay $758 per month from the May 1993 interim order until April 1994, at which time the final order generally required Father to pay $660 per month. The final order also bore a handwritten note from the trial court directing that the parties were to bear their own attorney fees.

■ We first address the proper utilization of the child support worksheets. We initially note that Mother did not ask the trial court to make any findings of fact on any of the issues raised on appeal. Normally, this is fatal to a party's challenge to the sufficiency of the evidence supporting a trial court's ruling. *See Cockrell v. Cockrell,* 117 N.M. 321, 324, 871 P.2d 977, 980 (1994) (party who does not request findings or otherwise call trial court's attention to problem with sufficiency of the evidence waives right to challenge sufficiency of the evidence supporting particular finding). However, at the April 13, 1994, presentment hearing, Mother did bring to the attention of the trial court her opposition to each of the three rulings that are the subject of her appeal, and she had earlier given closing argument on each of the issues. Under these circumstances, we believe that Mother sufficiently called the trial court's attention to the legal error of using Worksheet A and may have adequately preserved the other issues as well. *See id.*

■ Mother challenged the trial court's ruling that Worksheet A was to be used to calculate the basic child support obligation by arguing that, if the non-physical custodial parent has visitation with the child more than thirty percent of the time, then Worksheet B must be applied. The Guidelines require

that Worksheet A be used to calculate child support obligations when the custody arrangement is a "basic visitation situation." NMSA 1978, § 40–4–11.1(F)(1) (Repl.Pamp. 1994). A basic visitation situation is defined by the Guidelines as:

a custody arrangement whereby one parent has physical custody and the other parent has visitation with the children of the parties less than thirty percent of the time. Such arrangements can exist where the parties share responsibilities pursuant to Section 40–4–9.1. . . .

NMSA 1978, § 40–4–11.1(D)(2). The Guidelines require that Worksheet B be used for "other custody arrangements." NMSA 1978, § 40–4–11.1(F)(2) (Repl.Pamp.1994). There is no dispute that Father had visitation with the child more than thirty percent of the time, pursuant to a stipulated order of custody and time sharing. Mother argues that the thirty-percent factor in the definition of a basic visitation situation mandates that if the non-physical custodial parent has visitation with the child for more than thirty percent of the time, then Worksheet B must be used. We agree.

■ When we are called upon to interpret a statute, our primary goal is "to determine and give effect to the intent of the legislature." *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). The stated purposes of the Guidelines are to:

(1) establish as state policy an adequate standard of support for children, subject to the ability of parents to pay;

(2) make awards more equitable by ensuring more consistent treatment of persons in similar circumstances; and

(3) improve the efficiency of the court process by promoting settlements and giving courts and the parties guidance in establishing levels of awards.

NMSA 1978, § 40–4–11.1(B) (Repl.Pamp. 1994). Where a statute is clear and unambiguous, it must be applied as written. *See Johnson v. Francke*, 105 N.M. 564, 566, 734 P.2d 804, 806 (Ct.App.1987). Mother contends that because the evidence was uncontradicted that Father had visitation with the child more than thirty percent of the time,

the clear language of Section 40–4–11.1(D) and (F) required the trial court to apply Worksheet B. This conclusion is compelling and serves the purposes of the Guidelines by mandating consistent use of the worksheets for parties similarly situated. Because the trial court deviated from the requirements of the Guidelines and made no finding that application of Worksheet B and its amount of child support would be unjust, *see* NMSA 1978, § 40–4–11.2 (Repl.Pamp.1994) (such a finding necessary to deviate from the Guidelines), we hold that the trial court erred in awarding child support in the amount provided by Worksheet A.

■ However, this does not end the matter. The basic obligation amounts are much higher using Worksheet B than they are using Worksheet A for the same amounts of income. Accordingly, Father agreed at the hearing that, if Worksheet A were used, he would have no objection to utilizing a zero figure for Mother's income, but that, if Worksheet B were used, he would urge the trial court to set an income figure for Mother. He argued that Mother's direct examination testimony in which she testified to the zero figure was impeached on cross-examination when she admitted to earning $8,000 in wages during one year. He also argued that evidence surrounding the figures for Mother's business indicated that she had more income than she was admitting. The trial court had before it evidence that, at the time of the petition for modification of child support, Mother was one of two partners in a private business, and had deposited $30,-467.57 in the business's account in 1993. Mother's partnership tax records for 1993 indicate that the business was operated at a loss due to depreciation and expenses. However, the trial court is not limited to the tax treatment of business income records, *see Roberts v. Wright*, 117 N.M. 294, 297, 871 P.2d 390, 393 (Ct.App.1994), and Mother also testified that the partnership account was used for both business and personal expenses. Thus, there existed evidence on which the trial court could have found that Mother had more than zero income.

Because the trial court used Worksheet A, it did not need to rule on Father's request to

set an income figure for Mother. However, now that we have reversed that use of Worksheet A, the income figure for Mother needs to be determined. Accordingly, we reverse and remand for the trial court to hold a hearing if necessary, set an income figure for Mother if the trial court is persuaded that the evidence in the case warrants one, and calculate child support using Worksheet B.

As stated previously, we believe that the most equitable way of handling the other issues on appeal is to allow the new trial judge to redetermine them in light of its ruling on the amount of child support it orders. However, to provide guidance, we offer the following comment. Mother's first issue raises the propriety of the trial court's refusing to retroactively increase child support to the date of the filing of the petition. The general rule is "that *the applicable date for any modification* is the date of filing of the petition or pleading rather than the date of hearing ... unless there are unusual circumstances." *Montoya v. Montoya*, 95 N.M. 189, 190, 619 P.2d 1233, 1234 (1980). Although we have held that the determination of whether the unusual circumstances warranting a departure from the general rule exist is within the discretion of the trial court, *Roberts*, 117 N.M. at 300, 871 P.2d at 396, that discretion should not be exercised in a manner that eliminates the general rule. The trial court should consider whether the circumstances of this case are really that unusual, and if it departs from the general rule, findings explaining such departure would facilitate review on appeal.

The final issue that Mother raises is the propriety of the trial court's direction that the parties were to bear their own attorney fees. Mother contends that because the trial court modified child support, adopted her interpretation of a settlement agreement disposing of the proceeds of the parties' house, and reduced the time that Father spent with the child pursuant to a stipulated order of custody and time sharing, she was the prevailing party. Accordingly, she asserts that she should have been awarded her attorney fees for the cost of the action for modification of child support. *See* NMSA 1978, § 40–4–7(A) (Repl.Pamp.1994).

The award of attorney fees under Section 40–4–7(A) rests within the sound discretion of the trial court. *Gilmore v. Gilmore*, 106 N.M. 788, 792, 750 P.2d 1114, 1118 (Ct.App.), *cert. denied*, 107 N.M. 16, 751 P.2d 700 (1988). That discretion is not unrestrained, however, *see Roberts*, 117 N.M. at 301, 871 P.2d at 397, and the trial court, in determining whether to award attorney fees, should consider various factors, including the most important one of economic disparity between the parties. *See Foutz v. Foutz*, 110 N.M. 642, 644, 798 P.2d 592, 594 (Ct.App. 1990). We have previously held that "[w]here a party lacks sufficient funds to pay attorney fees for representation incident to dissolution of marriage or rights incident thereto, and the financial situation of the parties is disparate, it is error to deny an award of reasonable attorney's fees." *Sheets v. Sheets*, 106 N.M. 451, 456, 744 P.2d 924, 929 (Ct.App.1987). However, economic disparity between the parties is not the only factor to be considered. *Gilmore*, 106 N.M. at 792, 750 P.2d at 1118. The trial court should also consider the "nature of the proceedings, the complexity of the issues, the relief sought and recovered, the ability of the parties' attorneys and the ability of the parties to pay." *Id.*

In the instant case, the trial court had conflicting evidence before it on the issue of the parties' financial resources. Although the trial court used a figure of zero to represent Mother's monthly income, as we have pointed out, the use of that figure was encouraged by Father for purposes of the worksheet calculation on condition that Worksheet A was used. While there was some evidence of more income for Mother, the undisputed facts are that there was economic disparity. Now that we are remanding for further factfinding on the issue of Mother's income, we deem it appropriate to remand on the attorney fees issue. The trial court shall consider the various factors relevant to the attorney fees issue and exercise its discretion accordingly.

For the foregoing reasons, we vacate the order from which appeal was taken and remand for redetermination of the three issues in accordance with this opinion. We award

Mother her costs and $2,000 for attorney fees on appeal.

IT IS SO ORDERED.

BOSSON and BUSTAMANTE, JJ., concur.