1997–NMCA–024

935 P.2d 1165

**Melissa ALVERSON, Petitioner–Appellee,**

v.

**Curtis HARRIS, Respondent–Appellant.**

**No. 16,724.**

Court of Appeals of New Mexico.

Dec. 18, 1996.

Scott E. Turner, Watrous & Reardon, Albuquerque, for Appellee.

**154**

David C. Hughes, Hughes & Carver, P.C., Albuquerque, for Appellant.

### OPINION

ARMIJO, Judge.

1. Respondent appeals from the final order of the trial court determining child support arrears and prospective child support. On appeal, Respondent raised three issues: (1) whether the costs of providing child care while Petitioner is attending classes in pursuit of a college degree are incurred "due to employment or job search" for the purpose of calculating child support obligations under NMSA 1978, Section 40-4-11.1(G) (Repl. Pamp.1994); (2) whether the trial court failed to offset child support arrearages with $500 in payments made by Respondent to Petitioner during June and July of 1993; and (3) whether the trial court's award of attorney fees to Petitioner constituted an abuse of discretion or was not supported by substantial evidence. We affirm.

### FACTUAL BACKGROUND

2. This action arose under the Uniform Parentage Act, NMSA 1978, Sections 40-11-1 through -23 (Repl.Pamp.1994), to establish parentage of two children, child support, custody and arrears in child support. Petitioner is the mother of two minor children, ages two and four. Prior to trial on the issues of support and arrearages, the parties stipulated that Respondent is the father of these two children, that there should be joint legal custody with Petitioner having primary physical custody, and that Respondent should have interim visitation according to a schedule. Only the issues concerning support and arrearages were tried to the court.

3. Petitioner testified at trial in 1995 that she was a full-time student at the University of New Mexico (UNM), where she was working toward completing a Bachelor of University Studies degree with an anticipated graduation date of May 1996. Petitioner testified that she decided to go back to college and obtain her degree because she had sustained carpal tunnel syndrome and sciatica and therefore could not continue her previous work as a massage therapist. In her previous jobs, Petitioner earned at or just above minimum wage. Because her child-care costs were $4.00 to $5.00 per hour, she testified that, under her current circumstances (that is, during pursuit of her degree), "the amount I would have to pay a babysitter is the amount that I would be making in a job." Petitioner listed several higher-paying positions in the health promotion field for which she expected to qualify after graduating. No evidence was presented that Petitioner was not diligent in her educational pursuits or that she was using education as a pretext to avoid working or paying child support or that she was abusing her educational opportunities. To the contrary, Petitioner's actions in pursuing her degree were taken in good faith.

4. The trial court found that Petitioner is not able to be employed while she completes her degree and that Petitioner cannot attend college without incurring child-care costs. Based on these findings, the trial court determined that "Petitioner's child-care costs are work related and job search related" and calculated these costs to be $360 per month. The trial court included the child-care costs in calculating the arrears due for the first four months of 1995, and in determining prospective child support. However, in calculating the arrears due for June and July of 1993, the trial court declined to include an offset of $500 that Respondent allegedly paid to Petitioner during this period. Finally, Petitioner was awarded $5,956.39 in attorney fees.

### DISCUSSION

I. *Child–Care Costs Incurred While Petitioner Attends College*

5. On appeal, Respondent challenges the trial court's legal conclusion that the costs of placing the parties' children in child care while Petitioner attended classes at the University of New Mexico were "incurred on behalf of these children due to employment or job search[.]" Section 40-4-11.1(G). Respondent also challenges the trial court's decision to include such child-care costs among the child support arrearages awarded to mother for the first four months of 1995.

6. The standard for reviewing the trial court's legal conclusions is whether the law was correctly applied to the facts, viewing

the facts in a manner most favorable to the prevailing party. *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991).

7. Whether the phrase "employment or job search" as used in Section 40–4–11.1(G) includes Petitioner's educational pursuits at UNM is an issue of first impression. Respondent relies on *Gomez v. Gomez*, 119 N.M. 755, 758, 895 P.2d 277, 280 (Ct.App. 1995), to support his assertion that the child support guidelines are clear and unambiguous and should be enforced as written. However, *Gomez* involved a simpler and more quantifiable issue concerning the definition of "basic visitation" as a custody arrangement where one parent has visitation with a child less than 30% of the time. *See id.* (citing Section 40–4–11.1(D)). Because Respondent's case involves a different section of the statute where such an explicit, quantifiable definition is lacking, we conclude that *Gomez* is not controlling.

8. The phrase "employment or job search" as used in Section 40–4–11.1(G) is ambiguous because "it can be understood by reasonably well-informed persons in two or more different senses." *See State v. Elmquist*, 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct.App.1992). In particular, the term "job search" can be understood in both a narrow sense and a broad sense. In its narrowest sense, a job search might include only specific activities of relatively short duration such as attending an interview or disseminating a resume. However, in a broader sense, a job search could encompass the development and implementation of a step-by-step plan to achieve an individual's employment goals. Such a plan might include education and training as well as contacts with prospective employers.

9. We apply principles of statutory construction to resolve this ambiguity. In determining the meaning of a statute, the central question is the intent of the legislature. *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 351–354, 871 P.2d 1352, 1357–60 (1994). In determining the intent of the legislature, we look to the language of the statute and its purpose. *Dona Ana Sav. & Loan Ass'n v. Dofflemeyer*, 115 N.M. 590, 592, 855 P.2d 1054, 1056 (1993). All of the provisions of the statute, together with other statutes relating to the same subject matter, must be read together to ascertain the legislative intent. *Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 225, 668 P.2d 1101, 1102 (1983).

10. Section 40–4–11.1(H) reads as follows:

The cost of providing medical and dental insurance for the children of the parties and the net reasonable child-care costs incurred on behalf of these children due to employment or job search of either parent shall be paid by each parent in proportion to his income, in addition to the basic obligation.

We note that the worksheets used for calculating child support obligations and the instructions accompanying these worksheets refer to this obligation as "work-related child care." *See* §§ 40–4–11.1(J), (K) (Basic Visitation, Instructions for Worksheet A, Line 6, and Shared Responsibility, Instructions for Worksheet B, Line 11).

11. Taken in context, we think the separate, itemized treatment of child-care costs incurred "due to employment or job search" reflects a legislative recognition of the importance of these costs and the fact that the amounts involved may vary in a manner that is independent of the income earned by the parties. In addition, the use of the disjunctive phrase "employment or job search" indicates to us a legislative intent to account for child-care expenses incurred in pursuing the prospect of employment as well as during the time a parent is actually employed. We regard the reference to "work-related child care" in the worksheets and instructions as merely an attempt to summarize the provisions of Section 40–4–11.1(G) and not as evidence of an intent to exclude child-care expenses incurred during a parent's job search. However, since the statute contains no explicit definition of a "job search," we ascertain its meaning from an analysis of the statute's purpose and that of other statutes concerning the same subject matter.

12. Respondent contends that to interpret Section 40–4–11.1(G) in a manner that includes Petitioner's educational pursuits as

part of a "job search" would change the statute's purpose and effectively provide Petitioner with an unprecedented form of spousal support between persons who were never married—all to Petitioner's personal benefit and not to the benefit of the children. To avoid such a result, Respondent urges us to treat Petitioner's educational pursuits as a voluntary refusal to work rather than a legitimate component of a job search.

13. We find that Respondent's rationale demonstrates a lack of sensitivity to and understanding of the needs and expectations of a child on the eve of the twenty-first century. Under New Mexico's child support guidelines, both parents have a clear obligation to support their children and to contribute to child-care costs that directly relate to their employment or search for employment. Moreover, in the long run, the increased earning capacity associated with Petitioner's college education is likely to lead to increases in the total support the children receive, thus furthering the "state policy" of establishing "an adequate standard of support for children, subject to the ability of parents to pay." Section 40–4–11.1(B)(1).

14. Requiring Respondent to pay a share of the child-care costs incurred while Petitioner attends college also is consistent with our legislature's recognition that there are times when, in the long run, it is more productive for an individual and more beneficial to an individual's family and community to pursue an education or job training program rather than making an immediate entry into the job market. This recognition is found in a broad array of New Mexico statutes. See NMSA 1978, §§ 50–6–1 to –16 (Repl. Pamp.1993) (child labor); §§ 22–12–1 to –8 (Repl.Pamp.1993) (compulsory school attendance); § 21–21A–2 (Repl.Pamp.1996) (educational assistance); § 51–1–5 (Cum.Supp. 1996) (unemployment insurance); § 40–4–7(B)(1)(a) (Repl.Pamp.1994) (rehabilitative spousal support); §§ 27–1–1 to –10–4 (Repl. Pamp.1995) (public assistance); §§ 32A–1–1 to –21–7 (Repl.Pamp.1995) (Children's Code). We examine the Children's Code and public assistance statutes in further detail.

15. The child support guidelines in Section 40–4–11.1 share the same subject matter with the Children's Code in two respects. First, both statutes are concerned with protecting the interests of children. The provisions of the Children's Code recognize that addressing the needs and abilities of children often requires addressing the needs and abilities of other family members as well. See §§ 32A–1–3(A); 32A–3A–1; 32A–17–2. Based on this recognition, the Children's Code provides a variety of education, training, and counseling programs for parents as well as children. See §§ 32A–17–4(B)(4); 32A–3A–2(C); 32A–2–28(A).

16. The second way in which the Children's Code shares the same subject matter with Section 40–4–11.1 concerns reimbursement for child-care costs. Just as the child support guidelines allow a credit to one parent from the other for work-related child-care expenses which are incurred, the Children's Code expects parents to reimburse the State for costs it incurs in providing services to a child. See §§ 32A–2–28(A); 32A–2–30(C); 32A–3B–20(A); 32A–4–26(A); and 32A–6–14(K).

17. The State's public assistance statutes also share the same subject matter with Section 40–4–11.1 in these two respects. First, the State's Public Assistance Act addresses the subject of child support by requiring noncustodial parents who owe a duty of support to children on public assistance to reimburse the State for that assistance. See § 27–2–28. Second, the state's interest in protecting and providing for the interests of children while a parent is participating in a state-sponsored job-training program is no more apparent than in those provisions which routinely provide child care services to parents receiving public assistance while they prepare to enter the job market. See §§ 27–2–6.2(D)(3); § 27–2–40; see also 8 NMAC 3.PFP.463.7, 3.PFP.601 (administrative regulations for public assistance program in which State pays child-care costs incurred while qualified participants attend college).

18. We find two analogies between these laws and the present case. First, under applicable provisions of the Children's Code and the public assistance statutes, Petitioner's pursuit of a college education would no doubt be viewed as beneficial to her children

both in terms of enhancing the quality of their lives and in terms of increasing her future earning potential. We see no reason why this pursuit should not be viewed as beneficial to the children for purposes of determining child support obligations as well. While we recognize that some expenses incurred by a parent may not factor into the calculation of child support obligations even though they may benefit the child in some way, *see In re Marriage of Hoffman,* 878 P.2d 103 (Colo.App.1994), we find that the child-care costs incurred by Petitioner in the case at bar were reasonable in relation to the benefits that the children received.

19. Second, insofar as the public assistance statutes do not treat parental education and job training any differently than work experience for purposes of triggering an individual's entitlement to State-subsidized child-care services, we do not see any reason for differential treatment with regard to triggering a parent's duty to pay child-care expenses as part of child support obligations. If the State lawfully and properly furnished child-care services to a parent while he or she attended a state-sponsored education or job training program, the State might seek reimbursement for these services from the other, noncustodial parent. *See* § 27–2–28(A). In view of the strong policy considerations which favor safeguarding the best interests and welfare of a child, the result should be no different in the present case simply because the issue arose in the context of a dispute between two parents.

20. In considering Section 40–4–11.1(G) together with other statutes relating to the subjects of children, families and employment, we discern a legislative intent to include within the meaning of child-care costs incurred "due to employment or job search," as that phrase is used in Section 40–4–11.1(G), those child-care expenses incurred by Petitioner while she attends classes in good faith pursuit of a reasonable and attainable goal of future employment at a significantly higher wage than she reasonably can be expected to earn without such education. Such an educational pursuit is a reasonable component of a "job search."

21. Respondent points out that the trial court made no explicit finding that Petitioner's college education would make her more employable at a job that pays more than minimum wage, even though Petitioner requested such a finding. Respondent's theory below, as evidenced by his proposed findings and conclusions, was simply that child-care costs for attending college were not covered by the statute; he did not request a finding that Petitioner's course of study would not increase her employment opportunities. However, under the facts established at trial and before us in the record, a finding that Petitioner's college education would increase her earning capacity properly can be implied from the trial court's ultimate finding on the issue. *See Newcum v. Lawson,* 101 N.M. 448, 455, 684 P.2d 534, 541 (Ct.App.1984) ("Findings of fact adopted by the trial court are to be construed so as to uphold rather than defeat a judgment, and, if from the facts found, the other necessary facts to support the judgment may be reasonably inferred, the trial court's judgment will not be disturbed on appeal."). There is ample evidence that Petitioner's educational pursuits were made in good faith and this evidence, taken with her expressed expectation of obtaining a higher-paying job so as to provide a better life for her children, supports the inference that Petitioner's pursuit of educational opportunities has a reasonable likelihood of increasing her future earning potential and thereby benefiting the children.

22. For the reasons discussed above, we hold that child-care costs incurred "due to employment or job search," as that phrase is used in Section 40–4–11.1(G), legitimately include the child-care expenses incurred by Petitioner while she attended classes in good faith pursuit of a reasonable and attainable goal of future employment at a significantly higher wage than she reasonably could be expected to earn without such education. Because accounting for such child-care expenses is consistent with both the child support guidelines and other statutes relating to the same subject matter, we do not regard Petitioner's child-care costs as requiring additional justification as a deviation from the child support guidelines under Section 40–4–

11.2. Thus, we need not address the meaning of Section 40–4–11.2.

## II. Failure to Offset the Child Support Arrearages

23. Respondent's second claim is that the trial court erred by failing to offset the award of child support arrearages with $500 that he allegedly paid to Petitioner during June and July of 1993. The trial court denied Respondent's request to have the $500 in payments credited to his arrearages on the grounds that there was no way to know whether these payments were for child support or some other purpose. We treat Respondent's claim as a challenge to the trial court's findings of fact regarding the amount of child support paid by Respondent and review this claim under a substantial evidence standard. "In deciding whether a finding has substantial support, the reviewing court must view the evidence in the light most favorable to support the finding and all reasonable inferences in support of the court's decision will be indulged." *Tyrpak v. Lee,* 108 N.M. 153, 154, 768 P.2d 352, 353 (1989).

24. When Respondent's counsel asked Petitioner whether the payments in question were for child support, she said "we had never even discussed child support." Of the four money order receipts introduced at trial as Exhibit K, only the receipt dated October 6, 1994, contains the words "child support." This receipt was included in the offsets granted by the trial court. Petitioner's response to questions about the other three money order receipts is ambiguous as to whether Petitioner was admitting to receiving the full $500 in June and July of 1993 or just two money orders totalling $300. Finally, the Trial Aid adopted by the trial court shows that Petitioner was living at her parent's residence in Michigan during the summer of 1993. We hold that this evidence was sufficient to support the trial court's findings.

## III. Award of Attorney Fees to Petitioner

25. Respondent asserts that the trial court abused its discretion by awarding the entire amount of attorney fees expended by Petitioner in prosecuting her case ($5,956.39), and by failing to take into account Respondent's limited financial resources in awarding attorney fees to Petitioner. "Abuse of discretion occurs when the trial court's ruling is 'clearly against the logic and effect of the facts and circumstances before the court.'" *Jaramillo v. Fisher Controls Co.,* 102 N.M. 614, 622–23, 698 P.2d 887, 895–96 (Ct.App.) (quoting *State v. Lucero,* 98 N.M. 311, 314, 648 P.2d 350, 353 (Ct.App. 1982)), *cert. denied,* 102 N.M. 613, 698 P.2d 886 (1985). "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Talley v. Talley,* 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct.App.1993).

26. The statute authorizing an award of attorney fees contemplates such fees as necessary to ensure "an efficient preparation and presentation of [the] case." NMSA 1978, § 40–4–7(A) (Repl.Pamp.1994). The most important factor the trial court considers in deciding whether to award attorney fees is "economic disparity between the parties." *Gomez v. Gomez,* 119 N.M. 755, 759, 895 P.2d 277, 281 (Ct.App.1995). The record in this case strongly indicates an economic disparity between the parties. Petitioner's monthly income was $79, while Respondent's monthly income was $2,659. In addition, the trial court requested and had before it an itemized breakdown of the time and charges billed by Petitioner's attorney. Respondent did not submit, nor did the trial court enter any finding of fact, regarding Respondent's support of his current spouse and the two children from that marriage. By failing to request this finding, Respondent has waived such issue and has not preserved the issue for appeal. *See* NMRA 1996, 1–052(B)(1)(f); *Fenner v. Fenner,* 106 N.M. 36, 41, 738 P.2d 908, 913 (Ct.App.), *cert. denied,* 106 N.M. 7, 738 P.2d 125 (1987). Nonetheless, the record discloses that the trial court considered Respondent's financial circumstances in reaching its findings regarding his gross monthly income and in allowing him to make installment payments on the attorney fee award instead of requiring a lump sum. Under these facts and circumstances, we hold that the trial court's award of $5,956.39 in attorney fees to Peti-

tioner did not constitute an abuse of discretion.

27. Respondent also contends that the amount of attorney fees awarded to Petitioner was not supported by substantial evidence. In determining whether a finding of fact is supported by substantial evidence, we consider only the evidence that supports the finding and ignore evidence that contradicts the finding. *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 476, 697 P.2d 156, 159 (Ct.App.1985). Petitioner's attorney provided a breakdown of her fees and costs in two affidavits and in statements attached to Petitioner's requested Findings of Fact and Conclusions of Law. We hold that there was substantial evidence to support the award of attorney fees.

## CONCLUSION

28. For the foregoing reasons, the decision of the trial court is affirmed. Petitioner is awarded the sum of $2,500, plus applicable gross receipts tax, as and for attorney fees in this appeal.

29. **IT IS SO ORDERED.**

APODACA, C.J., and ALARID, J., concur.