This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38212**

**ELSHAN AKHADOV,**

Petitioner-Appellee,

v.

**VALIDA DUSHDUROVA,**

Respondent-Appellant.

and (consolidated for purpose of opinion)

**No. A-1-CA-39458**

**ELSHAN AKHADOV,**

Petitioner-Appellant,

v.

**VALIDA DUSHDUROVA,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY**
**Maria Sanchez-Gagne, Matthew J. Wilson, and Sylvia F. LaMar, District Judges**

Kalm Law Firm, P.C.
C. James Kalm
Thomas L. Kalm
Albuquerque, NM

for Appellee/Appellant Elshan Akhadov

Lees + Flores, L.L.C.
Richard S. Lees
Albuquerque, NM

for Appellant/Appellee Valida Dushdurova

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}**     This Court issued an opinion on July 13, 2022, which is hereby withdrawn and replaced with this opinion, following the denial of Respondent Valida Dushdurova's (Mother) motion for rehearing. This case involves multiple appeals from a divorce proceeding between Petitioner Elshan Akhadov (Father) and Mother.[1] The parties contest child support and custody rulings. We affirm.

**BACKGROUND**

**{2}**     Because the parties are familiar with the facts of this case and this opinion is written solely for the parties' benefit, we omit a discussion of the facts. We instead identify and summarize the key orders and motions to orient the resolution of the issues in this case.

> September 14, 2018, Custody Order: The district court ordered joint legal and physical custody, with equal timesharing between Mother and Father.
>
> Father's September 25, 2018, Motion to Modify Support: Father moved for a reduction in child support based on the September 14, 2018, custody order for equal timesharing.
>
> April 5, 2019, Support Order: The district court ordered Father to pay, effective October 1, 2018, just over $100 per month in child support (an amount calculated using Worksheet B), based on the September 14, 2018, custody order. Father previously was obligated to pay just over $2,000 per month (an amount calculated using Worksheet A), based on his limited visitation with the children.[2]

---

[1] Mother initiated the original appeal in May 2019. After that case was put on the general calendar and submitted to this panel for decision, Mother filed two more appeals, and Father filed his first appeal; those subsequent appeals were consolidated under one case number; Mother's original appeal was stayed pending the completion of briefing in the consolidated case, and the consolidated appeal is now before us. We exercise our discretion to consolidate the original and consolidated appeals for decision. *See* Rule 12-317(B) NMRA.

[2] Worksheet A of the New Mexico Child Support Guidelines applies to "basic visitation" situations. *See* NMSA 1978, § 40-4-11.1(F)(1), (K) (2008, amended 2021); *see also* § 40-4-11.1(D)(2) (2008) (defining "basic visitation" as "a custody arrangement whereby one parent has physical custody and the other parent has visitation with the children of the parties less than thirty-five percent of the time"). Worksheet B applies to "shared responsibility" situations. *See* § 40-4-11.1 (F)(2), (K) (2008); *see also* § 40-4-11.1(D)(3) (2008) (defining "shared responsibility" as "a custody arrangement whereby each parent provides a suitable home for the children of the parties, when the children of the parties spend at least thirty-five percent of the year in each home and the parents significantly share the duties, responsibilities and expenses of parenting").

Mother's April 1, 2019, Motion to Modify Custody and Support: Mother moved for sole physical custody and, in anticipation of the April 5, 2019, support order, an increase in child support through the use of Worksheet A, based on her having had the children during Father's periods of responsibility.

August 19, 2020, Custody Order: The district court awarded Mother sole physical and legal custody, with Father having visitation only as initiated by the children.[3]

November 25, 2020, Support Order: The district court ordered Father to pay, effective September 1, 2020, over $2,000 per month in child support (an amount calculated using Worksheet A), based on the limited-visitation terms of the August 19, 2020, custody order.

## DISCUSSION

### I. Standard of Review

**{3}** "We review a district court's child custody determination for abuse of discretion." *Hopkins v. Wollaber*, 2019-NMCA-024, ¶ 9, 458 P.3d 583 (internal quotation marks and citation omitted). Likewise, "[t]he determination of child support is within the district court's discretion and we review it on appeal only for an abuse of discretion." *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 4, 136 N.M. 693, 104 P.3d 559; *see also Chavez v. Chavez*, 1982-NMSC-104, ¶ 5, 98 N.M. 678, 652 P.2d 228 (reviewing the grant or denial of retroactive child support for an abuse of discretion). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. When challenged, findings of fact used by the district court for child support and custody determinations are reviewed for substantial evidence. *See Alverson v. Harris*, 1997-NMCA-024, ¶ 23, 123 N.M. 153, 935 P.2d 1165. In resolving these appeals, we bear in mind the presumption that the district court's determinations are correct and that "the burden is on the appellant to clearly demonstrate that the district court erred." *Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701.

### II. Mother's Appeals

**{4}** Mother, in her original and subsequent appeals, chiefly challenges the district court's child support award, based on Worksheet B, for the period when equal timesharing was ordered. She makes two arguments relating to support, which we address in turn. We then briefly address Mother's non-support claims of error.

---

[3]After the district court issued the August 19, 2020, custody order, the court issued findings of fact and conclusions of law, as well as an amended custody order. For ease of reference, these collectively are referred to herein as the August 19, 2020, custody order.

## A.	April 5, 2019, Support Order Based on the Court-Ordered Custody Arrangement

**{5}**	Mother first challenges the district court's April 5, 2019, support order granting Father's request to reduce his support obligation through the use of Worksheet B, in light of the September 14, 2018, equal timesharing custody order. Mother contends Father never exercised his periods of responsibility and that the district court erred by awarding child support based on the court-ordered custody arrangement, instead of on the parties' actual practice.[4]

**{6}**	Shortly after being awarded equal timesharing under the September 14, 2018, custody order, Father moved to modify child support. Mother opposed the motion and separately sought summary judgment on the matter, arguing there was no material and substantial change of circumstances because Father indisputably had not exercised his periods of responsibility. *See* NMSA 1978, § 40-4-11.4(A) (1991, amended 2021) (providing that "[a] court may modify a child support obligation upon a showing of material and substantial changes in circumstances subsequent to the adjudication of the pre-existing order").

**{7}**	The district court granted Father's motion, reducing child support to reflect the custody arrangement ordered on September 14, 2018. As grounds, the court ruled that the custody order was "not a suggestion, but a legally binding order of the [c]ourt" and should be applied in determining child support. The court-ordered custody arrangement amounted to a "shared responsibility" situation, warranting the use of Worksheet B and resulting in a substantial reduction in Father's support obligation. *See* § 40-4-11.1(D)(3), (F)(2), (K) (2008).

**{8}**	Mother argues it was error to calculate support based on the custody arrangement ordered by the court, and not on the custody arrangement practiced by the parties. Citing *Klinksiek*, 2005-NMCA-008, ¶ 20, Mother emphasizes the general principle that the paramount concern in a child support award is the welfare of the child. Mother otherwise contends the definition of "shared responsibility" in Section 40-4-11.1(D)(3) (2008) was not met, in that the children did not spend at least thirty-five percent of the year in Father's home.[5] Mother, however, cites no authority to support

4Mother additionally challenges the district court's April 5, 2019, support order resolving objections to the hearing officer's report and decision on a procedural ground. She contends the court erred by failing to hold a hearing on the matter, in accordance with Rule 1-053.2(H)(1)(b) NMRA. Mother, however, fails to show us where she preserved this issue, and it is not apparent from our review of the record that it was ever brought to the court's attention. We, accordingly, decline to entertain this argument. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue."); *cf. Rawlings v. Rawlings*, 2022-NMCA-013, ¶¶ 3-6, 27, 505 P.3d 875 (reversing and remanding for a hearing pursuant to Rule 1-053.2(H) where the appellant preserved the issue), *cert. granted* (S-1-SC-39107, Jan. 13, 2022).

5Mother assumes that "custody arrangement," as used in the definition of "shared responsibility," refers to the arrangement practiced by the parties. *See* § 40-4-11.1(D)(3) (2008) (defining "shared responsibility" as "a custody arrangement whereby each parent provides a suitable home for the children of the parties,

her contention that basing child support on the custody arrangement ordered by the court—as opposed to the custody arrangement practiced by the parties—constitutes an abuse of discretion. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (providing that where a party cites no authority to support an argument, we may assume no such authority exists); *Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 11, 140 N.M. 637, 145 P.3d 117 ("Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed." (internal quotation marks and citation omitted)).

**{9}** Further, Mother's contention appears to be an issue of first impression in New Mexico, and, contrary to Mother's suggestion, involves competing policy considerations that undoubtedly will vary depending on the particular facts and circumstances of each case. *See, e.g.*, *Potter v. Potter*, 55 P.3d 726, 730 (Alaska 2002) (discussing policy considerations when basing a prospective child support award on visitation practices and cautioning that "only rarely should child support be set in an amount that reflects visitation practices different from decreed levels" because of the risk that a custodial parent may profit by denying or discouraging visitation); *Turinsky v. Long*, 910 P.2d 590, 595 (Alaska 1996) (providing that "[c]hild support awards should be based on a custody and visitation order" and "[i]f the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order"); *Hesse v. Hesse*, 778 N.W.2d 98, 103 (Minn. Ct. App. 2009) ("Any . . . result [other than that derived from basing support on scheduled parenting time] would encourage litigation by allowing a party to return to court to argue for . . . a recalculation of support, based solely on that party's failure to exercise scheduled parenting time. A party who wishes to challenge compliance with the parenting-time provisions of a court order should instead move for a hearing to resolve the parenting-time dispute.").[6] *See generally* Marian F. Dobbs, *Determining Child & Spousal Support* § 6:63 (2022) (discussing numerous case-explored considerations influencing whether to base a child support award on visitation practices, as opposed to the court-ordered arrangement). Mother, however, has not discussed such competing policy considerations or otherwise adequately developed an argument why the district court's award of child support based on the custody arrangement it ordered, and not on the custody arrangement practiced by the parties, was an abuse of discretion, in light of the particular facts and circumstances of this case. We will not do this work for her. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶¶ 70-71, 309 P.3d 53 (declining to review an

---

when the children of the parties spend at least thirty-five percent of the year in each home and the parents significantly share the duties, responsibilities and expenses of parenting"). But that definition does not elucidate whether the arrangement referred to is the one ordered by the court—or, instead, the one practiced by the parties. It seems the Legislature, in drafting this provision, may have assumed they would be one and the same. Given both that Mother's reading of the statute is not the only possible reading and that we would have to resort to further statutory construction to decide what the Legislature would have intended when the actual custody arrangement deviates from the court-ordered custody arrangement, we decline to consider this issue further in light of the absence of a developed argument by Mother. *See Corona*, 2014-NMCA-071, ¶ 28 ("This Court has no duty to review an argument that is not adequately developed.").

6We cite these out-of-state authorities only to illustrate the policy considerations at play here.

inadequately briefed issue, where to do so would necessitate doing the appellant's work).

**{10}** Having not developed her argument, Mother fails to overcome her burden of persuasion on appeal. *See Corona*, 2014-NMCA-071, ¶ 26. The April 5, 2019, support order is affirmed.[7]

## B.      Effective Date of the November 25, 2020, Support Order

**{11}** In Mother's second appeal, she challenges the district court's November 25, 2020, support order, which applied Worksheet A to increase Father's support obligation based on the August 19, 2020, award of sole custody to her. Mother argues the district court erred by not making the support order retroactive—that is, she contends the effective date should have corresponded to the date of her April 1, 2019, motion and not with the change in custody, as the district court ruled.

**{12}** On April 1, 2019, prior to the district court's April 5, 2019, modification of child support, Mother moved for sole physical custody and a corresponding increase in support. Consistent with her reasons for opposing the April 5, 2019, custody order, Mother argued that "child support should be modified to reflect the actual periods of responsibility occurring at this time." Later, Mother asked the district court to revisit the ruling in its April 5, 2019, support order, arguing the court had misapplied the law.[8]

**{13}** The district court ultimately awarded Mother sole physical and legal custody in the August 19, 2020, custody order and, in the November 25, 2020, support order, increased Father's support obligation effective September 1, 2020, the first of the month after the change in custody. As for Mother's request to reconsider the issue decided in its April 5, 2019, support order, the district court declined, observing the order was on appeal to this Court. As justification for the change in support in the November 25,

7Regarding Mother's appeal of the denial of her motion for summary judgment, which sought the denial of Father's motion to modify child support, and the related denial of her motion to strike Father's affidavit submitted in response to her motion for summary judgment, such rulings are not separately reviewable from the district court's April 5, 2019, custody order. *See Green v. Gen. Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 19, 106 N.M. 523, 746 P.2d 152 ("We hold that a denial of a motion for summary judgment is not reviewable after final judgment on the merits. If a summary judgment motion is improperly denied, the error is not reversible for the result becomes merged in the subsequent trial."). Furthermore, we do not address Mother's argument that the April 5, 2019, support order was not in the best interests of the children, as this argument was raised for the first time in Mother's reply brief. *See, e.g.*, *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 23, 110 N.M. 314, 795 P.2d 1006 (declining to address an issue because it was first raised in the reply brief).

8Specifically, in Mother's memorandum of points and authorities for the June 8, 2020, child support hearing, she noted that the district court was "asked to make a determination of the appropriate . . . child support since April 1, 2019." She referred to the then-controlling child support ruling (that from April 5, 2019), which applied Worksheet B, and argued that "the trial court in this post decree modification proceeding is not bound by the prior misapplication of the law in the previous proceeding." She went on to argue that the court was not bound by the law-of-the-case doctrine "to follow the erroneous application of the law" in that ruling, and that the child support guidelines "do not require the trial court to blindly apply the schedule of periods of responsibility in the controlling custody order when evidence establishes that there is a pattern of not following the custody order."

2020, support order, the court ruled that the August 19, 2020, custody order constituted a material and substantial change of circumstances. *See* § 40-4-11.4(A) (1991). In setting an effective date of September 1, 2020, for the change in support, the district court ruled that "[c]hild support will not be modified to an earlier date unless so mandated by the Court of Appeals."

**{14}** On appeal, Mother argues two grounds of error. First, citing the above-quoted language from the November 25, 2020, support order, Mother argues that the district court abdicated its duty to rule on the issue of retroactive child support. Mother reads that language not as the denial of her request for retroactive child support, but rather as the district court's expression of reluctance to decide the issue. We do not agree, as the order's plain language can be fairly read as just such a denial. *See, e.g.*, *Benavidez*, 2006-NMCA-138, ¶¶ 7-11 (construing a court order to resolve an issue on appeal).

**{15}** From the plain language of the November 25, 2020, support order, the district court ordered the change in child support to correspond with the change in court-ordered custody. *See id.* ¶ 8 ("The plain meaning of the language used [in a court order] is the primary indicator of intent."). This was in keeping with the district court's prior decision to base support on the court order and not on the parties' practice. That is, the district court's pronouncement that child support "[would] not be modified to a date earlier than [the court-ordered custody change]" operated as a denial of Mother's request for retroactive support. This view of the November 25, 2020, support order is bolstered by the district court's reference to the then-pending appeal of the April 5, 2019, support order and the statement that the increase in support would not be backdated "unless so mandated by [this Court]." Considering the issue at the heart of Mother's appeal of the April 5, 2019, support order—i.e., whether a child support award should correspond to the court-ordered custody arrangement, as opposed to the parties' practice—along with the fact that Mother asked the district court to revisit its April 5, 2019, ruling, these aspects of the November 25, 2020, support order evince a refusal to rescind that ruling, absent a higher court's discernment of error in it. *See id.* (considering the context of the case to ascertain the meaning of a court order); *see also Fed. Nat'l Mortg. Ass'n v. Chiulli*, 2018-NMCA-054, ¶ 14, 425 P.3d 739 (observing that the pleadings and other portions of the judgment may be considered when construing an ambiguous or uncertain order). In short, having declined to revisit its ruling, the district court ordered the increase in child support to coincide with the court-ordered change in custody—i.e., the court denied Mother's request for retroactive support; it did not abdicate its duty to rule on the matter.

**{16}** Second, Mother argues that, as a matter of law, the child support increase should have been retroactive to April 1, 2019, the date of her motion to modify. Mother cites *Montoya v. Montoya*, 1980-NMSC-122, 95 N.M. 189, 619 P.2d 1233, and *Gomez v. Gomez*, 1995-NMCA-049, ¶ 10, 119 N.M. 755, 895 P.2d 277, *superseded by statute on other grounds as stated in Erickson v. Erickson*, 1999-NMCA-056, ¶ 25, 127 N.M. 140, 978 P.2d 347, for the proposition that "absent unusual circumstances, child support modifications should be made effective as of the date of the application for support." She then observes that the court made "no findings that would support deviating from

[that] rule." From this we understand Mother to argue that, because there were no unusual circumstances to interfere with an effective date of April 1, 2019, the increase should have taken effect then.

**{17}** One problem with this argument is that Mother did not make it sooner. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Mother fails to indicate whether or where this argument was preserved, *see* Rule 12-318(A)(4) NMRA (mandating that the brief in chief include "a statement explaining how the issue was preserved in the court below"), and our review of the record reveals no obvious signs of preservation.[9] *See Crutchfield*, 2005-NMCA-022, ¶ 14. Such a violation of our appellate rules relieves us of any duty to review the issue. *See* Rule 12-318(J) (subjecting "[b]riefs that fail to comply with the requirements of this rule" to the sanctions provided for in Rule 12-312(D) NMRA); Rule 12-312(D) (providing that we may, on our own initiative, refuse to consider the contentions of a party that fails to comply with our appellate rules); *accord Crutchfield*, 2005-NMCA-022, ¶ 14. Likewise, to whatever extent the district court might have erred by deviating from *Montoya* and *Gomez*, any such error is excused by reason of Mother's failure to timely bring the legal principle from those cases to the court's attention. *See, e.g.*, *Zimmer*, 2020-NMCA-020, ¶ 39 ("We require parties to assert the legal principle upon which their claims are based . . . in the trial court." (internal quotation marks and citation omitted)); *see also Crutchfield*, 2005-NMCA-022, ¶ 14.

**{18}** Even had Mother preserved this issue, or even if the district court was aware of *Montoya* and *Gomez* but declined to extend them, Mother does not convince us that the district court's denial of retroactive child support to April 1, 2019, the date of her motion to modify, was error. *Montoya*, on which *Gomez* relies, *see* 1995-NMCA-049, ¶ 10, is distinguishable from this case. *Montoya* did not involve a change in custody, as this case does. *See* 1980-NMSC-122, ¶¶ 3-4. And in *Montoya*, at least some of the change in circumstances potentially justifying the change in child support preceded the filing of the motion to modify child support—unlike here, where the court-ordered change in custody occurred months after the motion to modify child support was filed. *See id.* ¶¶ 1, 3. As for *Gomez*, it reinforces the notion that the "retroactivity" rule is a "general" one. 1995-NMCA-049, ¶ 10 (contemplating that the trial court on remand could deviate from the "general rule" of retroactivity); *see Montoya*, 1980-NMSC-122, ¶ 2 (contemplating an exception to the rule that a modification to child support must be retroactive to the date of the filing of the petition). Accordingly, the district court here might have validly overlooked *Montoya*'s and *Gomez*'s "retroactivity" rule in favor of aligning the effective

---

9In those instances in which Mother brought the issue of retroactive child support before the district court, she neither cited *Montoya* or *Gomez* nor explained why the increase in child support should be backdated to April 1, 2019. *See McDonald v. Zimmer Inc.*, 2020-NMCA-020, ¶ 39, 461 P.3d 930 ("In general, an issue is not preserved unless the appellant fairly invoked a ruling of the trial court *on the same grounds argued in the appellate court. . . . We require parties to assert the legal principle upon which their claims are based* and to develop the facts in the trial court." (emphasis added) (internal quotation marks and citations omitted)). She instead urged the district court to revisit its decision to base child support on the court-ordered custody arrangement, which, as discussed, it declined to do.

date with the post-motion court-ordered change in custody.[10] *Cf. Chavez v. Chavez*, 1982-NMSC-104, ¶ 7, 98 N.M. 678, 652 P.2d 228 (overlooking *Montoya*'s rule where the change in circumstances justifying the change in child support was contemporaneous with the hearing, not the filing of the petition). Mother's failure on appeal to explain why *Montoya* and *Gomez* applies under the particular circumstances of this case does nothing to convince us that the district court's apparent disregard of those cases was error. *See, e.g.*, *Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115 (recognizing that the burden of showing reversible error is on the complaining party).

**{19}** The November 25, 2020, support order is affirmed.

## C. Mother's Remaining Claims of Error

**{20}** Mother raises two additional claims of error. In Mother's first appeal, she complains that the district court entered a partial divorce decree "without a finding of exceptional circumstances or consideration of the impact of the partial decree [on the children, income division, child support, or taxes], as required under Rule 1-126 [NMRA]." Missing again from her argument, however, is an accompanying statement of preservation and a record citation showing where (and that) she objected to the entry of the partial decree on Rule 1-126 grounds. *See* Rules 12-321(A); 12-318(A)(4). Nor is it obvious from our review of the record that this particular objection was made; we therefore decline to entertain this argument.[11] *See Zimmer*, 2020-NMCA-020, ¶ 39; *see also Crutchfield*, 2005-NMCA-022, ¶ 14. In Mother's second appeal, she challenges the district court's grant of Father's motion to stay resolution of her motion for attorney fees pending appeal. Mother fails to convince us that this was an abuse of discretion or that this stay, if error, prejudiced her. *See Alpers v. Alpers*, 1990-NMCA-015, ¶ 8, 111 N.M. 467, 806 P.2d 1057 (providing that the grant of a stay is a matter of judicial discretion); *see also Kennedy*, 2000-NMSC-025, ¶ 26. We thus reject Mother's additional claims of error.

## II. Father's Appeal

---

[10]Indeed, ordering retroactive child support under the circumstances would have given Mother an end-run around the district court's April 5, 2019, ruling that child support correspond to the court's order, not the parties' custody practice, which the court, as noted, declined to revisit.

[11]Even were preservation not an impediment to review, Mother fails to explain how the district court's purported failure to comply with Rule 1-126 resulted in prejudice to her. While Mother complains of "significant disputes over the effective date of child support and interim income allocation" that "erupted" after the entry of the decree, as well as her loss of child support for the period predating the decree, it is far from clear how the court's omissions led to these outcomes. We will not supply that explanation for her. *See, e.g.*, *Kennedy*, 2000-NMSC-025, ¶ 26 (recognizing that the burden of showing reversible error is on the complaining party).

**{21}** Father challenges the August 19, 2020, award of sole custody to Mother and the corresponding November 25, 2020, increase in child support. Father alleges several points of error, none of which we find compels reversal.[12]

**{22}** First is that the district court made contradictory findings of fact in support of its custody decision. Father points to the following findings, which relate to his theory that Mother was engaging in "parental alienation" such that the children resisted entering into his custody during the appointed times: (1) "Mother played a large role in the complete and utter lack of a relationship between Father and the children[, and h]er conduct has been harmful to the children"; and (2) "Mother was recorded actively engaging in alienating behavior at the Advisory Consultation[.]" Father contrasts those findings with these subsequent statements by the district court: "Father has alleged alienating conduct by Mother. There have been no prior findings supporting this allegation and none from [the custody] trial." In Father's words, the "fundamental" issue on appeal is "the contradiction between the . . . findings of alienating behavior on the part of Mother and the . . . conclusion that there were no findings . . . supporting the allegations of alienating conduct by Mother."

**{23}** We see no reversible error here, even assuming the cited findings are in fact contradictory. *See Sanchez v. Saylor*, 2000-NMCA-099, ¶ 23, 129 N.M. 742, 13 P.3d 960 (recognizing that this Court presumes that district court findings are not inconsistent). Not only does Father cite no law requiring reversal where a lower court makes contradictory findings, but our law lends support to the opposite result. Specifically, we are to "indulge every presumption in favor of upholding the court's judgment when faced with . . . inconsistent . . . findings" and "resolve seeming inconsistencies, if possible, to justify the judgment based on a fair construction of the findings." *Id.* Moreover, we "need not consider evidence favorable to [an appellant], even if found in findings of fact," *id.*; consequently, findings like the first two cited above are to be disregarded on appeal. *See id.* In short, the mere presence of seemingly inconsistent findings is no basis for relief.

**{24}** Next, Father highlights findings favorable to him, seeming to suggest they justify reversing the custody order. Elsewhere, referring to the statutory standards for determining custody, he criticizes the district court's ultimate determination. As best we can tell, Father appears to argue that the evidence presented to the district court was insufficient to meet the standards for terminating joint custody.

**{25}** When faced with a sufficiency challenge, we do not question whether the district court could or should have arrived at the opposite result. *See N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436; *see also, e.g.*, *Sanchez*, 2000-NMCA-099, ¶ 23 (stating that an appellate court does not "take the district court's place as weigher of facts and judge of credibility"). Rather, "[t]he question

---

[12]Father also offers some general background on parental alienation, including citing a handful of this Court's non-precedential opinions mentioning this topic. While parental alienation was the theme of many of Father's allegations below, we do not read this aspect of Father's argument as raising an issue distinct from the rest of the arguments addressed below.

is . . . whether [substantial] evidence supports the result reached." *Casias Trucking*, 2014-NMCA-099, ¶ 20 (internal quotation marks and citation omitted). Thus, Father's attempts to reverse the judgment by bringing to our attention evidence supporting a different outcome are in vain. *See, e.g.*, *Sanchez*, 2000-NMCA-099, ¶ 23.

**{26}** On a broader level, Father's challenge fails to properly attack the evidence supporting the custody determination. As provided in our appellate rules, "A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless [(1)] the summary of proceedings includes the substance of the evidence bearing on the proposition"; and (2) "the argument identifies with particularity the fact or facts that are not supported by substantial evidence." Rule 12-318(A)(3), (4).

> In setting forth the substance of all the pertinent evidence, the appellant, in order to make a convincing argument, must present all supporting evidence in the light most favorable to the [fact-finder's] decision. This includes stating all reasonable inferences that can be drawn from the facts, while acknowledging that the possibility of drawing two inconsistent conclusions from the evidence does not mean the [fact-finder's] findings are unsupported by substantial evidence.

*Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 11, 115 N.M. 181, 848 P.2d 1108 (alteration, internal quotation marks, and citation omitted). *See generally id.* ¶¶ 4-18 (outlining the requirements for a proper sufficiency challenge and the reasons for them and illustrating in a particular case how they are unmet); *Maloof v. San Juan Cnty. Valuation Protests Bd.*, 1992-NMCA-127, ¶¶ 18-19, 114 N.M. 755, 845 P.2d 849 (same).

**{27}** Father does not comply with these dictates. He effectively ignores the host of findings made by the district court that led to its custody determination and fails to set forth the evidence and inferences supporting those findings. We therefore deem his challenge to the August 19, 2020, custody order waived. *See* Rule 12-318(A)(3), (4).

**{28}** Finally, as to the November 25, 2020, support order, Father argues that (1) "[u]nder *Spingola* [*v. Spingola*, 1978-NMSC-045, ¶ 24, 91 N.M. 737, 580 P.2d 958], the district [c]ourt was required to determine whether Mother was 'fulfilling [her] duty to foster good relations' between Father and the children"; (2) the court "did not consider whether Mother was fulfilling [that] duty"; and (3) the court "instead applied an arbitrary standard based on whether the conduct 'rose to the level of parental alienation.'" We are not convinced that the district court abused its discretion here. Contrary to Father's suggestion, *Spingola* does not condition an award of child support on a custodial parent's fulfillment of her duty "to see that normal parent-child relationships with the non-custodial parent are preserved." *Id. Spingola* instead concerns the grant of child support "over and above the normal necessities," *id.*, and merely approves of—i.e., does not require—inquiry into whether the custodial parent is fulfilling that duty, *see id.* Perhaps more to the point, it is hard to see how *Spingola* could undermine the child

support award made here, where, by all appearances, the amount of that award was determined using the Section 40-4-11.1 guidelines originally enacted in 1988, after *Spingola* was decided—guidelines whose primacy is clear. *See* § 40-4-11.1(A) (2008) ("In any action to establish or modify child support, the child support guidelines as set forth in [Section 40-4-11.1] shall be applied to determine the child support due and shall be a rebuttable presumption for the amount of such child support."). We accordingly affirm the November 25, 2020, support order.

**CONCLUSION**

**{29}** For the foregoing reasons, we affirm.

**{30}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**