1999-NMCA-056

978 P.2d 347

**Laura ERICKSON, Petitioner–Appellee,**

v.

**Christopher ERICKSON, Respondent–Appellant.**

**No. 19,428.**

Court of Appeals of New Mexico.

April 1, 1999.

Lloyd O. Bates, Jr., The Bates Law Firm, Las Cruces, for Appellee.

Charlotte Greenfield, Reeves, Chavez, Greenfield & Walker, P.A., Las Cruces, Michael Winchester, Winchester & Associates, Ltd., Las Cruces, for Appellant.

*OPINION*

HARTZ, J.

{1} Ordinarily, the district court's calculation of child support after marital dissolution is a straightforward process. The governing statute, NMSA 1978, § 40–4–11.1 (1995), contains schedules and worksheets that enable the court and the parties to plug in the parties' incomes, number of children, and a few other numbers to obtain the presumptively correct amount of child support. But this is not an ordinary case. Although the facts are uncontested, they are unusual. The question before us is whether either of the statutory worksheets applies and, if not, how child support should be calculated.

## I. BACKGROUND

{2} Laura Erickson (Mother) and Christopher Erickson (Father) are the divorced parents of two children, Andrew and Michelle. Andrew lives 59% of his time with Father and 41% of his time with Mother. Michelle lives 71% of her time with Mother and 29% with Father.

{3} Section 40–4–11.1 defines two different types of custody arrangements: basic visitation and shared responsibility. "Basic visitation" is defined as "a custody arrangement whereby one parent has physical custody and the other parent has visitation with the children of the parties less than thirty-five percent of the time." Section 40–4–11.1(D)(2). "Shared responsibility" is defined as "a custody arrangement whereby each parent provides a suitable home for the children of the parties, when the children spend at least thirty-five percent of the year in each home and the parents significantly share the duties, responsibilities and expenses of parenting." Section 40–4–11.1(D)(3). Thus, if Andrew were the only child of the marriage, the custodial arrangement would be described as shared responsibility, because Andrew spends at least 35% of the year with each parent. On the other hand, if Michelle were the only child of the parties, the custodial arrangement would be

described as basic visitation, because she spends less than 35% of her time with Father.

{4} The steps in computing child support are set forth in Section 40–4–11.1. The starting point is the income of each parent, which is defined by the statute as the "actual gross income of a parent if employed to full capacity or potential income if unemployed or underemployed." Section 40–4–11.1(C)(1). Subsection E then states:

The basic child support obligation shall be calculated based on the combined income of both parents and shall be paid by them proportionately pursuant to Subsections K and L of this section.

Subsection F states:

Physical custody adjustments shall be made as follows:

(1) for basic visitation situations, the basic child support obligation shall be calculated using the basic child support schedule, Worksheet A and instructions contained in Subsection K of this section. The court may provide for a partial abatement of child support for visitations of one month or longer; and

(2) for shared responsibility arrangements, the basic child support obligation shall be calculated using the basic child support schedule, Worksheet B and instructions contained in Subsection L of this section.

{5} The statutory schedule sets forth the basic child support given the combined income of the parents and the number of their children. This figure applies to basic-visitation arrangements; it is multiplied by 1.5 to obtain the amount applicable to a shared-responsibility arrangement. Each parent is obligated for a fraction of the basic support equal to that parent's share of the total income. In a basic-visitation arrangement, the parent with physical custody is treated as if that parent is paying all costs of basic support, and the parent who has visitation rights owes his or her share of the basic support to the custodial parent. *See* § 40–4–11.1(K) (Worksheet A). In a shared-responsibility arrangement, the basic-support obligation owed by a parent is reduced in proportion to the time that the child spends with the parent. *See* § 40–4–11.1(G). Adjustments to basic support can be made for medical and dental insurance and child care, *see* § 40–4–11.1(H), and for certain extraordinary expenses and expenses for long distance visitation or time sharing, *see* § 40–4–11.1(I), with each parent bearing such expenses in proportion to his or her income, regardless of the custodial arrangement. Finally, the amounts owed by each parent to the other parent are netted, and the parent owing the greater amount pays the net amount to the other.

{6} In this case the district court computed the child-support award using both Worksheets A (for basic visitation) and B (for shared responsibility). To compute the child support owed by Father with respect to Michelle, the court used Worksheet A. The court took $3484 as Mother's gross monthly income and $5680 as Father's gross monthly income, so that the parents' combined gross monthly income was $9164. (Father's actual income was $5726. The court reduced this by $46—incorrectly in our view, as we explain later—because of its computation that Father owed Mother $46 per month for Andrew's support.) The Basic Child Support Schedule in Section 40–4–11.1 provides that for gross monthly income greater than $8000, the basic child support for one child is 11% of the combined parental income. Thus, for a child whose parents have a combined income of $9164, the basic support is $1008. Worksheet A was filled out as follows:

**WORKSHEET A—BASIC VISITATION**

**MONTHLY CHILD SUPPORT OBLIGATION**

| | | Custodial Parent | Other Parent | Combined |
|---|---|---|---|---|
| 1. | Gross Monthly Income | $3,484 | $5,680 | $9,164 |
| 2. | Percentage of Combined Income | 38% | 62% | 100% |
| 3. | Number of Children | | | 1 |
| 4. | Basic Support from Table | NA | NA | $1,008 |

| | Custodial Parent | Other Parent | Combined |
|---|---|---|---|
| 5. Children's Health and Dental Insurance Premium | $0 | $40 | 40 |
| 6. Work-Related Child Care | 337 | 0 | 337 |
| 7. Additional Expenses (per 40-4-11.1(H)NMSA) | 0 | 0 | 0 |
| 8. Total Support [1] | $337 | $40 | $1,385 |
| 9. Each Parent's Obligation [line 2 x $1385] | 526 | 859 | |
| 10. Enter Amount for Each Parent from Line 8 | (337) | (40) | |
| 11. Each Parent's Net Obligation | $189 | $819 | |
| **FATHER PAYS MOTHER EACH MONTH** | | $819 | |

The district court made two adjustments to the basic support—one arising from Father's payment of a $40 monthly premium for Michelle's health and dental insurance and the other arising from Mother's monthly payment of $337 for work-related child care.

{7} For Andrew the court treated the custody arrangement as one of shared responsibility and computed the child support owed with respect to him using Worksheet B. Given the parents' combined gross monthly income of $9210, the statutory schedule sets the basic support for one child at $1013 per month. The instructions to Worksheet B provide that the basic support obtained from the schedule should then be multiplied by 1.5 to obtain the shared-responsibility basic obligation. That obligation is then apportioned between the parents, depending on the relative income of the parents and the percentage of the time that the child resides with each. Finally, Worksheet B provides for adjustments because of child care, insurance, etc.

{8} The district court's Worksheet B set forth the computation as follows:

### WORKSHEET B—SHARED RESPONSIBILITY

### MONTHLY CHILD SUPPORT OBLIGATION

| | Mother | Father | Combined |
|---|---|---|---|
| **PART 1—BASIC SUPPORT** | | | |
| 1. Gross Monthly Income | $3,484 | $5,726 | $9,210 |
| 2. Percentage of Combined Income | 38% | 62% | 100% |
| 3. Number of Children | | | 1 |
| 4. Basic Support from Table | | | $1,013 |
| 5. Shared Custody Basic Obligation [(1.5 x $1013)] | | | $1,520 |
| 6. Each Parent's Share [line 2 x $1520] | $577 | $942 | |
| 7. Number of 24 Hour Periods with each Parent | 153.0 | 212.0 | 365 |
| 8. Percentage [of time] with Each Parent | 42% | 58% | 100 |
| 9. Amount Retained [line 8 x line 6] | $242 | $546 | |
| 10. Each Parent's Obligation [line 6 - line 9] | $335 | $396 | |
| | | | |
| 11. Amount transferred[:] | | | |
| **FATHER PAYS MOTHER EACH MONTH** | | **$61** | |
| | Mother | Father | Combined |
| **PART 2—ADDITIONAL PAYMENTS** | | | |
| 12. Children's Health and Dental Insurance | $0 | $40 | $40 |
| 13. Work-Related Child Care | 0 | 0 | 0 |
| 14. Additional Expenses (per 40-4-11.1(H) NMSA) | 0 | 0 | 0 |
| 15. Total Additional Payments | $0 | $40 | $40 |
| 16. Each Parent's Obligation [line 2 x $40] | 15 | 25 | |
| 17. Amount transferred [line 15 - line 16] | ($15) | $15 | |
| **MOTHER PAYS FATHER EACH MONTH** | | **$15** | |

1. This line of the statutory worksheet is misleading. The first two columns are the sums of lines 5, 6, and 7, whereas the "Combined" column is the sum of lines 4, 5, 6, and 7. As a result, the "Combined" figure on this line is not the sum of the figures on the line for each parent. The worksheet in the statute should be revised.

PART 3—NET AMOUNT TRANSFERRED

| 18. | Basic Support | | |
|---|---|---|---|
| | Father pay Mother Each Month | | $61 |
| 19. | Additional Payments | | |
| | Mother Pays Father Each Month | $15 | |
| 20. | Net Payment[:] | | |
| | **FATHER PAYS MOTHER EACH MONTH** | | **$46** |

The only adjustment to the basic obligation arose from Father's payment of $40 a month for a health-and-dental-insurance premium for Andrew. Given Mother's share of the combined parental income, she would be responsible for paying $15 of that monthly figure, so the monthly support payable by Father for Andrew was reduced from $61 to $46. The total child support owed by Father to Mother was set at $865 per month, the sum of $46 for Andrew and $819 for Michelle.

{9} On appeal Father contends that the district court should have used only Worksheet B. He argues that the custodial arrangement as a whole should be described as one of shared responsibility, because on average the two children spend 44% of their time with him (Andrew spending 59% of his time with Father, and Michelle spending 29% of her time). Under his calculation, he should owe $579 per month in child support, a reduction of $286 per month.

## II. DISCUSSION

{10} We disagree with both the district court's calculation and Father's suggested alternative. We hold that the district court should compute child support in the following way: First, compute the child support for Michelle by treating her as the sole child in a basic visitation arrangement. Then compute the child support for Andrew by treating him as a child for whom Father and Mother have shared responsibility, adjusting the calculation to take into account that he is the sole child housed by Father and the second child housed by Mother. To explain how we reach this result, we first review the statutory guidelines and describe the premises that underlie them.

### A. *Basic Visitation*

{11} For basic visitation, the guidelines provide a schedule setting forth the appropriate amount of child support, given the combined gross monthly income of the parents and the number of children. For incomes up to $8000, in $50 increments, the schedule lists the basic support for one child or more, up to six children. For higher incomes, the schedule's instructions provide the percentage by which to multiply the combined income, the percentage increasing as the number of children increases. For example, if the parents have a combined gross income of $9210 per month and one child, the instructions say to multiply the income by 11%, *see* § 40–4–11.1(K), giving a basic support figure of $1013. The basic support is presumably the additional expense incurred by the custodial parent as a result of providing a home and caring for the child. *See* Marygold S. Melli & Patricia R. Brown, *The Economics of Shared Custody: Developing an Equitable Formula for Dual Residence*, 31 Hous. L.Rev. 543, 546–47 (1994) ("The parent who lives with the child is assumed to spend [the basic support] amount on the child.") (hereinafter Melli & Brown). The non-custodial parent pays the custodial parent a percentage of the basic support equal to the non-custodial parent's share of the combined income. *See id.* at 547 ("The parent who does not live with the child pays the parent with whom the child lives to cover that parent's share of the child's expenses."). If, for example, the income of the non-custodial parent is 62% of the combined income of the parents, the non-custodial parent will pay to the custodial parent 62% of the basic support.

{12} The identical process applies when there is more than one child, except that, assuming the same combined income of the parents, the amount of basic support increases for each additional child. The basic support for an additional child does not equal the amount of basic support for one child. The table recognizes that an additional child does not add as much expense to the household as

did the first child. *See Spingola v. Spingola,* 91 N.M. 737, 744, 580 P.2d 958, 965 (1978) ("Experience indicates that the support level for one child must be considerably higher than that necessary for additional children."). Thus, if the parents' combined income exceeds $8000 per month (as is true in the case before us), the basic support increases to 16.1% of the combined income if there are two children, increases further to 18.8% if there are three, etc. *See* § 40-4-11.1(K). (We shall refer to these percentages as "basic-support factors.") The added support for the third child (18.8% minus 16.1%, or 2.7%) is less than one-quarter of the support for one child alone (11%).

{13} Another important aspect of the basic-visitation calculation is that no consideration is given to expenses of the non-custodial parent. The underlying assumption of the statute is that if the child spends less than 35% of the year with a parent, that parent's basic living expenses are unchanged, or at least any increase in such expenses should not be compensated. Certainly, during visitation the non-custodial parent will incur costs for food and other items that would otherwise be borne by the custodial parent; but, again, these costs do not affect the non-custodial parent's obligation for basic support.

{14} The statute also provides for child support in addition to basic support. These additional items include health insurance, work-related child care for the custodial parent, extraordinary educational needs, etc. *See* § 40-4-11.1(H), (I). These expenses are split between the parents in proportion to their shares of the combined income. Such additional expenses can be owed to the non-custodial parent as well as to the custodial parent. If, for example, the non-custodial parent pays the health insurance premiums, as is the case here, the custodial parent will need to reimburse a portion of that premium based on the relative incomes of the parents. The final payment of child support is a net figure, so that one parent pays the other parent only one sum each month.

{15} To summarize child support under a basic-visitation arrangement:

1. The basic support is determined by the combined gross monthly income of the parents and the number of children.

2. Basic support increases for each additional child in the household, the amount of increase diminishing substantially for each additional child.

3. The non-custodial parent receives no "credit" for basic support for expenses incurred during visitation time with the child.

4. Each parent is responsible for that portion of basic support equal to that parent's share of the combined income. But the custodial parent is presumed to be paying all basic-support expenses in the first instance, so the non-custodial parent pays his or her share to the custodial parent.

5. The cost of child support in addition to basic support—such as for work-related child care and health insurance—is borne by the parents in proportion to their income, regardless of who has custody.

**B.** *Shared Responsibility*

{16} In a shared-responsibility arrangement, each parent is still responsible for child support expenses in proportion to that parent's income. *See* § 40-4-11.1(E), (H), (I). Hence, as with a basic-visitation arrangement, child-support expenses beyond basic support, such as medical insurance, are owed by the parents in proportion to their shares of the combined income. The only departure in this regard from the basic-visitation rules is that both parents are considered custodial parents, so each may *incur* work-related child care expenses.

{17} With respect to basic support, however, the fundamental differences between shared responsibility and basic visitation require some rules rather different from those for basic visitation. The differences are signaled by a change in nomenclature. The counterpart to basic support in the shared-responsibility arrangement is referred to as "shared responsibility basic obligation" in Worksheet B.

{18} There are three significant substantive differences between the rules for basic visitation and those for shared responsibility. First, each parent is, in a sense, both a custodial parent and a non-custodial parent. As is apparent from the district court's Worksheet B set forth above, both parents are treated the same way on the worksheet. Each owes the other a monthly sum. But the amounts are offset, so only one makes a monthly payment.

{19} Second, recognizing that it costs more to provide two homes for a child than to provide just one, the amount of basic support is substantially increased. *See* American Law Institute, *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 3.14 cmt. b (Tentative Draft No. 3, Part II, 4/8/98) (hereinafter the ALI Principles); Melli & Brown, *supra*, at 554–55; Laura W. Morgan, *Child Support Guidelines: Interpretation and Application* § 3.03[a], at 3–25 to 3–26 (1997 Supp.). Worksheet B provides that the shared responsibility basic obligation is 50% greater than the basic-support figure set forth in the statutory schedule. As stated in the ALI Principles, "Although there is no empirical data on child expenditure in dual residence arrangements, total child expenditure is frequently estimated to rise by 50 percent." ALI Principles, *supra*, § 3.14 cmt. c. For example, if the parents of one child have a combined income of $9210 per month, the schedule provides that basic support should be $1013 per month. The shared responsibility basic obligation, however, is 150% of $1013, or $1520. A parent who receives 62% of the combined income, whom we shall call Parent A, would then be responsible for 62% of $1520, or $942 per month. The parent receiving 38% of the combined income, whom we shall call Parent B, would be responsible for $578 in support each month.

{20} The third difference between the calculation of child support for basic visitation and the calculation for shared responsibility is that when there is shared responsibility, each parent receives credit for the percentage of time spent with the child. As previously noted, in the calculation of child support for basic visitation, the non-custodial parent receives no credit for the time the child spends with that parent, even if visitation is for as much as 34% of the time. But once the 35% threshold has been crossed, so that the arrangement is described as shared responsibility, credit can accrue. Consider the example in the prior paragraph in which parents A and B have a combined monthly income of $9210, with A receiving 62% of the total and B receiving 38%. Parent A is responsible for child support of $942 per month. If the child spends 58% of its time with Parent A, then Parent A receives a credit of 58% of its $942 share of the support, or $546. In other words, Parent A is responsible for only $942 − $546 = $396 per month. A similar calculation is made for Parent B. Although Parent B is the lower-income parent, Parent B is responsible for monthly child support of $578. Parent B then gets credit for the fact that the child spends 42% of its time with Parent B, a reduction of $243 per month. Parent B ends up being responsible for $335 per month in child support. As a result, Parent A owes Parent B $396 per month while Parent B owes Parent A $335. The net monthly payment is $61 from Parent A to Parent B. This is reflected on the district court's Worksheet B set forth above.

{21} The calculation of the credit can be thought of in a slightly different, but mathematically equivalent, way. Essentially, each parent is required to pay his or her share of the basic obligation incurred by the other parent while the child or children are with the other parent. Parent B has custody 42% of the time. Presumably, Parent B therefore incurs 42% of the basic-obligation expenses. Parent A, who receives 62% of the combined income, must pay Parent B 62% of that 42% of the basic support. Likewise, Parent B must pay Parent A 38% (Parent B's share of the combined income) of 58% of the basic obligation (that portion of the basic obligation incurred while the child or children are in the custody of Parent A). The difference between the two figures is what Parent A will pay Parent B in monthly child support.

{22} It is worth noting that the calculation of child support in a shared-responsibility arrangement rests in part on an implicit assumption that is almost certainly wrong. In giving credit to a parent for the time that the children spend with that parent, the statute assumes that a parent's expense of caring for a child in a shared-responsibility arrangement is proportional to the time that the child spends with that parent. In our example above, Parent A's support obligation is reduced by 58% because the child resides with Parent A for 58% of the year. But that assumption is highly unlikely to be true. Although the cost of food is probably proportional to the amount of time the child spends with the parent, the cost of establishing a home for the child probably depends little on whether the child spends 35% or 58% of its time at that parent's home. *See generally* Melli & Brown, *supra*, at 553–59 (discussing the economics of shared parenting). The reason that the cost of support rises by 50% in a shared-responsibility arrangement is that the fixed costs (home, furnishings, etc.) go up significantly when a child is provided with two homes. Because of the substantial fixed costs of providing a home for a child, the credit given to a parent for the time that the child spends with that parent is probably an excessive credit when that time is greater than half and is probably too low a credit when the time spent is less than half. This shortcoming, however, is generally ignored. Indeed, the ALI Principles, which point out, and offer a superior alternative to, a number of shortcomings in the common methods of computing child support, *see, e.g.,* ALI Principles, *supra*, § 3.05, nevertheless recommends the same sort of percentage reduction found in our statute. *See id.* § 3.14, cmt. d & ill. 1. *See generally* Melli & Brown, *supra*, at 564–71.

{23} To summarize the propositions that guide the calculations for shared responsibility:

1. The basic expenses of caring for the children increase by 50% because each parent provides a home for the children.

2. The basic obligation and additional expenses continue to be divided between the parents in proportion to their incomes.

3. Because each parent provides a home for the children, each should receive credit toward its share of the basic obligation in proportion to the time that the children reside with the parent.

### C. *This Case*

{24} We now turn to the facts of the case on appeal. The statute does not command how to proceed. The custody arrangement in this case is neither "basic visitation" nor "shared responsibility." The statute defines "basic visitation" as "a custody arrangement whereby one parent has physical custody and the other parent has visitation with the children of the parties less than thirty-five percent of the time." Section 40–4–11.1(D)(2). It defines "shared responsibility" as "a custody arrangement whereby each parent provides a suitable home for the children of the parties, when the children spend at least thirty-five percent of the year in each home and the parents significantly share the duties, responsibilities and expenses of parenting." Section 40–4–11.1(D)(3). Both definitions assume that the type of custodial arrangement will be the same for each child. That is, the language of the statute makes sense only if one parent has visitation rights with all the children or both parents have shared responsibility for all the children. That is not the situation here. Certainly, the overall arrangement with Andrew and Michelle cannot be described as basic visitation. Father has custody of Andrew more than 35% of the time and provides him with a home; he has more than visitation with Andrew. Likewise, the arrangement cannot be described as shared responsibility because it cannot be said that Father "provides a suitable home" for both children—his time with Michelle is "visitation" under the statute.

{25} Father suggests that Worksheet B applies in all situations except those specifically covered by Worksheet A; that is, Worksheet B applies unless one parent has custody of all the children and the other parent has visitation. But there is no such

catch-all language in the statute. Father points to our statement in *Gomez v. Gomez,* 119 N.M. 755, 758, 895 P.2d 277, 280 (Ct.App. 1995), that Worksheet B is to be used for all custody arrangements other than basic visitation. But that statement relied on language in a prior version of the statute, *see id.,* and is no longer good law. *Compare* NMSA 1978, § 40–4–11.1(F)(2) (1991) *with* NMSA 1978, § 40–4–11.1(F)(2) (1995).

{26} Alternatively, Father suggests that it would be appropriate to use Worksheet B after averaging the amount of time that each parent spends with the two children. Because Andrew spends 59% of his time with Father and Michelle spends 29% of her time with Father, the children, on average, spend 44% of their time with Father. But a calculation based on those percentages would overstate Father's contribution to child support, because under Worksheet B he would receive credit for the time Michelle spent with him even though he did not provide a home for her. As previously pointed out, the New Mexico guidelines assume that if the child spends less than 35% of the time with the parent, the parent does not incur sufficient support expenses to be taken into account in calculating child support. *See* ALI Principles, *supra,* § 3.14 cmt. b (parent with lesser residential responsibility does not incur significant additional expenses until the parent effectively makes a home for the child).

{27} Given that neither Worksheet A nor Worksheet B was conceived for the situation before us, one alternative would be to abandon the guidelines altogether. NMSA 1978, Section 40–4–11.2 (1989) permits deviation from the guidelines. It states:

> Any deviation from the child support guideline amounts set forth in Section 40–4–11.1 NMSA 1978 shall be supported by a written finding in the decree, judgment or order of child support that application of the guidelines would be unjust or inappropriate. Circumstances creating a substantial hardship in the obligor, obligee or subject children may justify a deviation upward or downward from the amount

that would otherwise be payable under the guidelines.

Rather than abandon the guidelines, however, we believe that the better course is to apply them as best we can, consistently with the underlying premises of the guidelines. Doing so will better serve the statutory purposes of the guidelines, which are to:

> (1) establish as state policy an adequate standard of support for children, subject to the ability of parents to pay;
>
> (2) make awards more equitable by ensuring more consistent treatment of persons in similar circumstances; and
>
> (3) improve the efficiency of the court process by promoting settlements and giving courts and the parties guidance in establishing levels of awards.

Section 40–4–11.1(B). By identifying the underlying premises of the guidelines, we can determine what the Legislature has decided is "equitable." By setting forth a formulaic method of establishing the presumptively correct amount of child support, we further the goal of "consistent treatment of persons in similar circumstances," we give guidance to the district courts, and we provide sufficient certainty of result to encourage parties to settle on the amount of child support without litigation.

{28} We find support for this approach in decisions from other jurisdictions which have adapted statutory formulas to situations not contemplated by the statutes. This has arisen primarily in cases involving split-custody arrangements, in which one parent has custody of one or more children while the other parent has custody of the other children. Although the statutory guidelines assumed that one parent had custody of all the children, some courts in these cases have calculated child support using the guidelines as if there were two separate families, and then offsetting the two awards of child support to obtain a net award owed by only one parent. *See In re Marriage of Hansen,* 465 N.W.2d 906, 910–11 (Iowa Ct.App.1990); *Tannehill v. Tannehill,* 88 Md.App. 4, 591 A.2d 888, 892 (Spec.App.1991); *Sefkow v. Sefkow,* 427 N.W.2d 203, 216–17 (Minn.1988); *Kerr v. Bell,* 178 A.D.2d 1, 581 N.Y.S.2d 879, 881

(1992). *But see Sinclair v. Sinclair*, 837 S.W.2d 355, 358–59 (Mo.Ct.App.1992) (calculating total support as if all children resided in one household, and apportioning support between the parents in proportion to number of children in the custody of each parent); *In re Marriage of Oakes*, 71 Wash.App. 646, 861 P.2d 1065, 1066–68 (1993) (similar). For example, if Child 1 lives with Parent A and Child 2 lives with Parent B, the support owed by Parent B is calculated as if the parties' only child were Child 1 and the support owed by Parent A is calculated as if Child 2 were the only child. Whichever parent owes the greater amount pays the difference between the amounts to the other parent. *See, e.g., In re Marriage of Hansen*, 465 N.W.2d at 910–11; *Tannehill*, 591 A.2d at 892.

{29} A similar approach is proper here. The custodial arrangement for Michelle is one of basic visitation. Mother and Father should be required to provide for her just as would be required of any parents with their combined incomes. The custodial arrangement for Andrew is one of shared responsibility, and he, too, should be provided for just as would be required of any parents sharing custodial responsibility who have the combined income of Father and Mother. The only adjustment that must be made to the worksheets derives from the recognition that Andrew is the second child for whom Mother is providing a home. As discussed above, the New Mexico guidelines assume that the additional expense of providing a home for a second child is much less than the additional expense for the first child. We thus use both Worksheets A and B as follows:

{30} The child support with respect to Michelle should be calculated almost identically to the way the district court completed Worksheet A in its calculations. The sole difference is that Father's gross monthly income should be $5726, instead of the $5680 figure used by the district court. The district court had reduced Father's gross monthly income by $46, the amount of child support owed by Father according to its Worksheet B calculations with respect to Andrew. But no such reduction is called for

under the guidelines. The support for each of the children of the marriage is calculated on the basis of the parents' combined incomes; the calculation for a second child—or a third, fourth, etc.—is not based on a reduced parental income arising from support paid for other children. *Cf.* § 40-4-11.1(B)(2)(d) and (e) (effect of support of children of prior or subsequent marriages on calculation of "gross income"). We do not reproduce the calculations with respect to Michelle but state only the final figure. Father owes Mother monthly child support of $822 for Michelle, an increase of $3 over the district court's calculation.

{31} Because the parents share responsibility for Andrew, each having residential responsibility more than 35% of the time, it is appropriate to calculate child support for Andrew by application of Worksheet B. With one adjustment. To apply Worksheet B without modification would be to assume that Andrew is a sole child for whom Father and Mother are each providing a home. That assumption is true for Father. He is providing a home only for Andrew, not for Michelle. But for Mother, Andrew is the second child for whom she is providing a home. Because Mother has already established a home for one child, she does not incur as much expense for Andrew as she would if Andrew were the sole child for whom she provided a home.

{32} It is important to treat Michelle as the first child and Andrew as the second. The result would be different if Andrew were treated as the first child. Then the calculation for Andrew would precisely follow Worksheet B for one child. Worksheet A would still be applicable for the support award for Michelle, but the basic support would need to be reduced substantially. As a second child, Michelle's basic support would be calculated by multiplying the combined income by 5.1% (16.1% (the basic-support factor for two children) minus 11.0% (the basic-support factor for one child)) rather than by 11%. This approach is inappropriate because Worksheet B would treat Andrew—the child who resides with Mother only a fraction of the year—as her first child, while Worksheet A would

treat Michelle—who resides with her the entire year—as her second child. We think it makes little sense to treat Michelle as the second child during the period of time when she is the only child at Mother's home. The proper approach is to treat Andrew as the second child; then Mother receives support at the full first-child level for the child for whom she has exclusive physical custody, and she receives support at the second-child level for the child who resides with her only part of the year. This approach reflects the economic realities of the custodial arrangement.

{33} Thus, we adjust the calculation as follows: The combined gross monthly income of Father and Mother is $9210. According to the child support statute, the basic support for one child is 11% of that figure, or $1013. The basic support for two children is 16.1% of the gross income, or $1483, an increase of 5.1% of gross income, or $470. The basic-support factor for Andrew is 11% when he resides at Father's home and 5.1% when he resides at Mother's. Andrew spends 58% of his time with Father and 42% with Mother.

Worksheet B assumes that a parent incurs expenses in proportion to the amount of time the child is in that parent's custody. It also assumes that custodial costs increase by 50% for a shared-responsibility arrangement. Thus, for 58% of the time Father has custodial expenses for Andrew of one-and-a-half times the cost of providing a residence for a single child ($1013 per month); and for 42% of the time Mother has custodial expenses for Andrew of one-and-a-half times the cost of providing a residence for a second child ($470 per month). The basic support would thus be $1.5 (.58 \times \$1013 + .42 \times \$470) = 1.5 (\$588 + 197) = \$1178$.

{34} The next step is to give each parent credit for the time Andrew resides with the parent. Mother should receive credit for her share of the cost of a second child during Andrew's stay with her, and Father should receive credit for his share of the cost of a first child during Andrew's stay with him. The revised Worksheet B then would appear as follows:

### WORKSHEET B—SHARED RESPONSIBILITY

#### MONTHLY CHILD SUPPORT OBLIGATION
(For clarity, lines 7 and 8 of the statutory, worksheet have been moved up to follow line 3, resulting in the renumbering of lines 4 through 8)

| | | Mother | Father | Combined |
|---|---|---|---|---|
| PART 1—BASIC SUPPORT | | | | |
| 1. | Gross Monthly Income | $3484 | $5726 | $9210 |
| 2. | Percentage of Combined Income | 38% | 62% | 100% |
| 3. | Number of Children | | | 1 |
| 4. | Number of 24 Hour Periods with each parent | 153 | 212 | 365 |
| 5. | Percentage of time with each Parent | 42% | 58% | 100% |
| 6. | Basic Support from Table (percentage of time with parent x basic-support factor x combined income) | (with respect to time at Mother's) $197 (42% x 5.1% x $9210) | (with respect to time at Father's) $588 (58% x 11% x $9210) | (at both homes) $785 |
| 7. | Shared Custody Basic Obligation (1.5 times line 6) | $296 (at Mother's) | $882 (at Father's) | $1178 (at both homes) |
| 8. | Each Parent's Share (line 2 x basic obligation at each home) | $448 (.38 x 296 = 113 at Mother's + .38 x 882 = 335 at Father's) | $730 (.62 x 296 = 183 at Mother's + .62 x 882 = 547 at Father's) | |
| 9. | Amount Retained (credit for time child resides at parent's home) (line 2 x line 7) | $113 | $547 | |
| 10. | Each Parent's Obligation (line 8 - line 9) | $335 | $183 | |
| 11. | Amount transferred | | | |
| **MOTHER PAYS FATHER EACH MONTH** | | $152 | | |

| | Mother | Father | Combined |
|---|---|---|---|
| **PART 2—ADDITIONAL PAYMENTS** | | | |
| 12. Children's Health and Dental Insurance | $0 | $40 | $40 |
| 13. Work-Related Child Care | 0 | 0 | 0 |
| 14. Additional Expenses (per §40-4-11.1(H)) | 0 | 0 | 0 |
| 15. Total Additional Payments | $0 | $40 | $40 |
| 16. Each Parent's Obligation | $15 | $25 | |
| (line 2 x $40) | | | |
| 17. Amount transferred | ($15) | $15 | |
| **MOTHER PAYS FATHER EACH MONTH** | **$15** | | |
| **PART 3—NET AMOUNT TRANSFERRED** | | | |
| 18. Basic Support | | | |
| Mother pays Father Each Month | $152 | | |
| 19. Additional Payments | | | |
| Mother Pays Father Each Month | $15 | ___ | |
| 20. Total Payment | $167 | | |
| **MOTHER PAYS FATHER EACH MONTH** | **$167** | | |

{35} The presumptive amount of child support Father owes Mother is therefore $822 for Michelle less the $167 Mother owes Father for Andrew, for a net of $655. The district court's award of $865 is incorrect.

## III. CONCLUSION

{36} For the foregoing reasons, we reverse the district court's award of child support. The presumptively correct monthly payment from Father to Mother is $655. We remand for further proceedings consistent with this opinion.

{37}   **IT IS SO ORDERED.**

WECHSLER and ARMIJO, JJ., concur.