This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40579**

**DIKLA SOPHIA BARANES,**

     Petitioner-Appellant,

v.

**JACOB BARANES,**

     Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Gerard J. Lavelle, District Court Judge**

The Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

Jacob Baranes
Rio Rancho, NM

Pro Se Appellee

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Dikla Sophia Baranes (Wife) appeals the district court's final order in her divorce proceeding against Jacob Baranes (Husband). On appeal, Wife argues that the district court erred by applying an incorrect method for calculating child support and by ruling that the property at 3409 Lafayette Dr. NE, Albuquerque, New Mexico (the Property) is Husband's sole and separate property. We reverse and remand.

**BACKGROUND**

**{2}** We provide a brief summary of the factual background and discuss the facts in more detail as they become relevant to our analysis. Wife and Husband were married in 2000. The parties share two minor daughters—M.B. and S.B. Following the parties' separation, Wife filed a petition for dissolution of marriage. Following a bench trial, the district court granted Wife's petition and entered a final decree of dissolution of marriage.

**{3}** Shortly thereafter, Wife filed an emergency motion for extension of time to file a motion to reconsider the district court's final decree, which the district court granted. In her motion to reconsider, Wife asked that the district court reconsider its child support calculations to account for the different timesharing arrangements for each child, and also to reconsider its ruling that the Property is Husband's sole and separate property. The district court denied Wife's motion. Wife now appeals.

## DISCUSSION

### I.     Timeliness

**{4}** As an initial matter, we briefly address Husband's assertion that this Court lacks jurisdiction over this appeal. Husband argues that Wife's motion to reconsider was untimely because the district court did not have the authority to extend the time to file a motion to reconsider pursuant to Rule 1-059 NMRA. Even if Husband is correct that the district court lacked such authority, we nevertheless conclude that the district court's order granting Wife's motion for an extension of time warrants looking beyond Husband's asserted procedural defect given the facts and circumstances of this case. *See Trujillo v. Serrano*, 1994-NMSC-024, ¶ 19, 117 N.M. 273, 871 P.2d 369 (stating that "[o]nly the most unusual circumstances beyond the control of the parties—such as error on the part of the [district] court—will warrant overlooking procedural defects"). Here, Wife filed an emergency motion to extend the time to file her motion to reconsider before the thirty-day deadline had passed and the district court granted the motion. Relying on this order, Wife timely presented the issues, which were then resolved by the district court on their merits and for which she now seeks appellate review. We will not fault Wife for any error on the part of the district court in granting her motion to extend. Accordingly, we now review Wife's claims on appeal.

### II.     Child Support

**{5}** Wife first argues, relying on this Court's decision in *Erickson v. Erickson*, 1999-NMCA-056, 127 N.M. 140, 978 P.2d 347, the district court erred in solely using Worksheet B to calculate Father's child support obligation because the timesharing arrangement for each child differs.[1]

---

[1]Husband responds that this issue is unpreserved because Wife failed to argue before or during trial that two different worksheets should have been used to calculate child support. We disagree. Although Wife raised this issue for the first time in her motion to reconsider, the district court ruled on the motion on the merits. *See State v. Jones*, 2002-NMCA-019, ¶¶ 7-8, 131 N.M. 586, 40 P.3d 1030 (holding that the state

**{6}** We review a district court's decision as to child support for an abuse of discretion. *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 4, 136 N.M. 693, 104 P.3d 559. "However, that discretion must be exercise in accordance with the child support guidelines." *Id.* A district court abuses its discretion "when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Mintz v. Zoernig*, 2008-NMCA-162, ¶ 17, 145 N.M. 362, 198 P.3d 861 (internal quotation marks and citations omitted).

**{7}** Here, the timesharing arrangement for the parties' two children differs. Pursuant to the Guardian ad Litem's recommendations adopted by the district court, the parties share fifty-fifty physical custody of M.B. Father has timesharing with S.B. from Thursday afternoon at three o'clock until Monday morning every other week and then on the alternating Thursday from three o'clock in the afternoon until seven o'clock in the evening.

**{8}** The district court stated during trial that it would use Worksheet B to calculate child support based on the annual number of days the children were with each parent. In the final decree of dissolution of marriage, the district court, aggregating the timesharing for both children, found that Husband's total timesharing with both children is 39 percent. Accordingly, the district court found that child support "should be calculated on . . . Worksheet B."

**{9}** The governing statute, NMSA 1978, § 40-4-11.1 (2021, amended 2023), "contains schedules and worksheets that enable the court and the parties to plug in the parties' incomes, number of children, and a few other numbers to obtain the presumptively correct amount of child support." *Erickson*, 1999-NMCA-056, ¶ 1. Section 40-4-11.1 defines two different types of custody arrangements—basic visitation and shared responsibility. *Erickson*, 1999-NMCA-056, ¶ 3. "Basic visitation" is defined as "a custody arrangement whereby one parent has physical custody and the other parent has visitation with the children of the parties less than thirty-five percent of the time." Section 40-4-11.1(F)(3). Whereas, "shared responsibility" is defined as "a custody arrangement whereby each parent provides a suitable home for the children of the parties, when the children spend at least [35] percent of the year in each home and the parents significantly share the duties, responsibilities and expenses of parenting." Section 40-4-11.1(F)(4). "[F]or basic visitation situations, the basic child support obligation shall be calculated using" Worksheet A, while "for shared responsibility arrangement, the basic child support obligation shall be calculated using" Worksheet B. Section 40-4-11.1(H)(1), (2).

**{10}** The classification of the type of custody arrangement is key to determining which child support worksheet must be used because in basic visitation arrangements "the parent with physical custody is treated as if that parent is paying all costs of basic support, and the parent who has visitation rights owes [their] share of the basic support

had preserved its argument for appellate review when it was raised in a motion to reconsider and the district court addressed the merits of the argument), *abrogated on other grounds by State v. Bomboy*, 2008-NMSC-029, ¶ 19, 144 N.M. 151, 184 P.3d 1045.

to the custodial parent." *Erickson*, 1999-NMCA-056*, ¶ 5. While, "in a shared-responsibility arrangement, the basic-support obligation owed by a parent is reduced in proportion to the time that the child spends with the parent." *Id.*

**{11}** In *Erickson*, an analogous case to the one at hand, we held that the district court incorrectly calculated a father's child support obligation because it used only Worksheet B to calculate child support where the custodial arrangement for one child was basic visitation, whereas the custodial arrangement for the other child was one of shared responsibility. *See id.* ¶ 29. We acknowledged that the relevant statute does not itself provide guidelines for how to proceed when the custody arrangement for multiple children is neither just "basic visitation" nor "shared responsibility." *See id.* ¶ 24. This is because the definitions for each type of arrangement "assume that the type of custodial arrangement will be the same for each child." *Id.* Because neither type of custodial arrangement, on its own, fit the circumstances—we reasoned that the best approach, consistent with the underlying premises of the guidelines themselves, was to use both Worksheets A and B. *See id.* ¶¶ 27-29.

**{12}** In reaching this holding, we reasoned that aggregating the time that each child spent with their father "would overstate [f]ather's contribution to child support, because under Worksheet B he would receive credit for the time [the child with the basis visitation arrangement] spent with him even though he did not provide a home to her" because "the New Mexico guidelines assume that if the child spends less than 35 percent of the time with the parent, the parent does not incur sufficient support expenses to be taken into account in calculating child support." *Id.* ¶ 26.

**{13}** Based on our review of both the parties' briefing and the final decree of dissolution of marriage, it is unclear what percentage of the time S.B. spends with Father. Therefore, we remand to the district court to determine that percentage, and if the percentage is less than 35 percent, to then recalculate Father's child support obligation for both children accordingly employing Worksheets A and B, consistent with this opinion and our holding in *Erickson*.

## III.   Lafayette Property

**{14}** Wife next argues, relying on this Court's holding in *Gabriele v. Gabriele*, 2018-NMCA-042, ¶¶ 15, 16, 421 P.3d 82 (holding that the wife failed to overcome a presumption of constructive fraud where there was no evidence that she disclosed the values of properties and businesses, the husband's rights, or that the husband received competent and independent advice prior to signing sole and separate property agreements), that the sole and separate property agreement (the Agreement) between Wife and Husband is "fraudulent" and "voidable" because she signed the document without receiving adequate consideration and without being advised of her rights. We agree that the Agreement is voidable and must be set aside.

**{15}** The parties began buying, refurbishing, and selling properties together during their marriage. The Lafayette property, a four-plex, was purchased in 2017—while the

parties were still married. Then in April 2020, Husband and Wife each signed the Agreement, designating the Property as Husband's separate property. Husband's name is the only name listed on the special warranty deed.

**{16}** Though property normally take its status at the time and by the manner of its acquisition, *see Zemke v. Zemke*, 1993-NMCA-067, ¶ 18, 116 N.M. 114, 860 P.2d 756, married persons "may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried." NMSA 1978, § 40-2-2 (1907). Such transactions between spouses are subject to "the general rules of common law which control the actions of persons occupying confidential relations with each other." *Id.* In interpreting this statute, our Supreme Court has held that transactions between spouses in which one spouse "secured a decided advantage over the [other]" are "presumptively fraudulent." *Beals v. Ares*, 1919-NMSC-067, ¶¶ 73, 82, 90, 25 N.M. 459, 185 P. 780; *see also Gabriele*, 2018-NMCA-042, ¶ 12. This is "because a husband and wife are fiduciaries upon whom are imposed the obligations of exercising the highest good faith towards each other in any dealing between them, and which precludes each from obtaining any advantage over the other by means of any misrepresentation, concealment, or adverse pressure." *Gabriele*, 2018-NMCA-042, ¶ 12 (alterations, internal quotations marks, and citation omitted).

**{17}** "Where one spouse receives grossly inadequate consideration for forfeiting [their] interest in community property, the other spouse is considered to have gained a decided advantage through constructive fraud, rendering the transaction voidable." *Id.* ¶ 13; *see also Primus v. Clark*, 1944-NMSC-030, ¶¶ 12, 21, 22, 48 N.M. 240, 149 P.2d 535 (concluding that there existed a "legal presumption of constructive fraud" where the wife received only $1,000 from the community estate worth $50,000); *Beals*, 1919-NMSC-067, ¶¶ 72, 82 (concluding that the husband had "secured a decided advantage over the wife" where the wife received only $4,000 and her interest in the subject property was between $35,000 and $75,000).

**{18}** In order to overcome the presumption of fraud in these cases, the spouse who has gained the advantage has the duty to show "(a) the payment of adequate consideration, (b) full disclosure by [the spouse] as to the rights of the other and the value and extent of the community property, and (c) that the other had competent and independent advice in conferring the benefits upon [them]." *Gabriele*, 2018-NMCA-042, ¶ 12 (alterations, internal quotation marks, and citation omitted). "Where the advantaged spouse fails to make this showing, the district court is to set aside the agreement[] . . . in question, to ascertain the value and extent of the community property, . . . and to divide the community property between the parties." *Id.* (alterations, internal quotation marks, and citation omitted).

**{19}** We first conclude that the presumption of constructive fraud exists in this case. The Agreement was signed years after the Property was acquired, and no evidence was presented to show that Wife received any monetary compensation for signing away her interest in the Property. The record indicates that the value of the Lafayette property was somewhere between $160,000 and $228,786. As a result, Wife's one-half

community interest was between $80,000 to $114,393. However, under the Agreement, Wife received no money in exchange for conveying her interest to Husband.

**{20}** The district court found, as Husband points out in his briefing to this Court, that Wife received adequate consideration of being relieved of all of the financial liability and physical labor that went into managing the Property by signing the Agreement. Even if we were to assume that Wife received some form of nonmonetary "consideration," Wife's "considerable forfeiture supports a presumption of constructive fraud." *See Gabriele*, 2018-NMCA-042, ¶ 14. We conclude that Husband gained a decided advantage over Wife through the Agreement. *See id.*

**{21}** We secondly consider whether Husband met his burden to show "(a) provision of adequate consideration, (b) full disclosure to [Wife] as to [her] rights and extent of the community property, and (c) that [Wife] had competent and independent legal advice prior to signing the [Agreement]." *See id.* There is simply no evidence showing that Husband fully disclosed to Wife her right to and the value of the Property, nor that Wife received independent legal advice before signing the Agreement. Therefore, we need not decide the question of consideration. *See id.* ¶ 15*.*

**{22}** Because Husband failed to meet his burden to overcome the presumption of constructive fraud, we hold that the Agreement is voidable and must be set aside. *See Gabriele*, 2018-NMCA-042, ¶ 16; *Beals*, 1919-NMSC-067, ¶ 93. Upon remand, the district court must determine the value of the Property to calculate Wife's community interest.

**CONCLUSION**

**{23}** For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**{24}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MEGAN P. DUFFY, Judge**